### DUNN *et al.* v. T. J. CANNON CO.

No. 5283.    Opinion Filed September 28, 1915.

(151 Pac. 1167.)

1.  **CONTRACTS—Construction—Intention of Parties.** A contract is entire when its terms, nature, and purposes show that it is contemplated and intended that each and all of its parts, material provisions, and the consideration are common each to the other and interdependent. The intention of the parties is to be ascertained from the language used, the subject-matter, and a consideration of all the circumstances.

2.  **CONTRACTS—Action on Express Contract—Recovery on Quantum Meruit.** In an action where the petition declares alone upon an express contract and full performance thereof is pleaded, no recovery can be had upon a quantum meruit.

(Syllabus by Bleakmore, C.)

*Error from Superior Court, Oklahoma County;*
*Edward Dewes Oldfield, Judge.*

Action by the T. J. Cannon Company, a corporation, against Ed L. Dunn and another, copartners. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

*John H. Wright* and *Clarence J. Blinn,* for plaintiffs in error.

*E. S. Bessey,* for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the superior court of Oklahoma county, on

April 10, 1912, by the defendant in error as plaintiff, to recover for services rendered in furnishing and maintaining certain billboards under the terms of the following contract:

"T. J. Cannon Company, Outdoor Advertising— Gentlemen: We hereby authorize and direct you to paint for us as per design agreed upon, and to maintain on exhibition for thirty-six months, from the average date of completion, an advertising sign display, located as indicated below, at the rental of $1.50 per board per month; it being understood that in the event any sign is lost during the life of the display, you are to replace said sign in another location. 25 boards, size 8x10, placed on 25 prominent railroad showings, covering the several roads entering Oklahoma City. These 25 boards are to be placed within a radius of six miles of Oklahoma City. You are to erect these boards in a first class workmanship manner and use A-1 material, both in construction and painting. The total amount of this contract shall be $37.50 per month. You are to repaint these boards at the end of each year with any copy we may desire free of charge to us. ($37.50.)

"For the services above rendered we promise to pay monthly to the order of the T. J. Cannon Company the aggregate sum of the rentals indicated above.

"[Signed] DUNN & ALEXANDER,

"Per Ed. L. DUNN.

"Accepted. T. J. CANNON."

The petition alleges full performance by the plaintiff. It was shown by the evidence that some of the billboards, without the knowledge of defendants, were placed without the six-mile radius. Defendants paid their monthly installments pursuant to said contract until June, 1911, when they refused to pay further, on the ground that the plaintiff had breached the same by erecting the

boards at places other than those provided for in the contract.

T. J. Cannon, an officer of plaintiff, testified:

"Q. This list [of locations of billboards] is dated April 1, 1911, but you did not deliver it until June or July, 1911, you say. Why didn't you deliver it before that? A. When I looked at the statement I saw some of the boards were placed eight or ten miles out, and I knew the contract said it was to be only six miles out, and I was afraid that Mr. Dunn would object to them being so far out, so I held it up as long as I could. Q. What, if anything, was said when you did furnish him this list, by either Mr. Dunn or Mr. Alexander? A. Mr. Dunn said these boards were not placed where his contract called for. Q. All right, what was said then? A. He said he was going to cancel the contract. Q. What did you say? A. I told him not to get on his high horse, but to take it easy and talk it over with me and let me see what I could do; that I might be able to sell his boards to the Chattanooga Medicine Company and take them off his hands. We talked a little while, and he said, 'You can consider the contract canceled so far as I am concerned.' We both got a little hasty and I walked out. Q. Well, state whether or not, prior to the time you furnished this list you ever informed him where the boards were. A. I told him they were all up when I collected his rent—all up in good shape as per contract. Q. That was all you said to him about that; you did not tell him where they were located? A. No; I said they were put up as per contract, which I thought they were at the time."

It would seem from the conduct of the parties that both construed the contract as an entirety; the defendants when they disclaimed further liability thereunder upon discovering plaintiff's failure to perform in full, and the plaintiff by its concealment of facts relative to the placing of the signboards. By the terms of the instrument, plaintiff undertook to furnish and maintain,

within a distance of six miles from Oklahoma City, 25 signboards of a certain size, advertising the business of defendants, in consideration of an aggregate definite sum of $37.50, payable monthly. It was clearly contemplated that the specified number of boards should be furnished within the radius designated, and all for a single definite consideration. In our opinion, from the language employed, it was the intention of the parties to enter into an entire, indivisible contract.

Plaintiff, without excuse, failed to fully perform on its part. Defendants, being without fault in this respect, when informed of such failure, declined to accept partial performance, and denied any future liability thereunder. They had paid in full, according to its terms, up to the time they learned of the plaintiff's breach of the contract, and thereafter voluntarily received no benefits therefrom.

Defendants had the right, in the first instance, to determine upon the use of a definite number of signs to be erected at certain places within a restricted area as a single means most beneficial in advertising their business, and to contract with plaintiff to furnish the same as a whole. It was impossible, under the evidence, to even approximately measure the benefits derived by defendants from each board of those placed within the radius provided by the contract, or to ascertain the amount of damage they may have sustained by reason of plaintiff's failure to furnish any one or all of the other signs where designated, and it cannot be said as a matter of law that such benefit or detriment was any certain sum or proportionate amount of the contract price.

51—13

In *Davidson v. Gaskill*, 32 Okla. 40, 121 Pac. 649, 38 L. R. A. (N. S.) 692, it is said:

"The entirety of a contract depends upon the intentions of the parties, as well as on the fact that the consideration is single, and the divisibility of the subject-matter, or the mode of measuring the price, does not affect the question. The covenants of an entire contract are, of course, material and dependent and covenants are to be considered dependent, or independent, according to the intention of the parties. The general rule of law gleaned from the cases is that, while a special contract remains open and unperformed, the one whose part of it has not been performed cannot recover for what he has done until the whole contract is completed. * * * There is no obligation to pay until the complete performance of the entire contract. *Crane v. Kaubel*, 34 N. Y. Super. Ct. 443; *Id.* 43 How Prac. [N. Y.] 389. Conditions precedent control over the equity of the case. *Maloney v. Rust*, 42 Conn. 236. It is a well-established rule that if a party by his own contract creates a duty or imposes a charge on himself, he must, under any and all conditions, substantially comply with the undertaking. To excuse a performance of his contract he must prov de for it. *Bacon v. Cobb*, 45 Ill. 47. He must do as he has contracted to do. *Summers v. Hibbard*, 153 Ill. 102, 38 N. E. 899, 46 Am. St. Rep. 872; *Anderson v. May*, 50 Minn. 280, 52 N. W. 530, 17 L. R. A. 555, 36 Am. St. Rep. 642; *Adams v. Nichols*, 19 Pick. (Mass.) 275, 31 Am. Dec. 137; *Harmony v. Bingham*, 12 N. Y. 99, 62 Am. Dec. 142."

In *Meek v. Daugherty*, 21 Okla. 859, 97 Pac. 557, it is said:

"It is the well-settled rule of law that there can be no recovery on a contract to do an entire piece of work for a specific sum unless the work is performed."

"A contract is entire when its terms, nature and purposes show that it is contemplated and intended that each

and all of its parts, material provisions, and the consideration are common each to the other and interdependent. A divisible contract is one which from its nature and purposes is susceptible of division and apportionment and has two or more parts in respect to matters and things embraced by it, and not necessarily dependent on each other, and the parties do not intend that they shall be. * * * Whether or not the contract is entire or divisible depends upon the intention of the parties. The intention is to be ascertained from the language sued, the subject-matter of the contract, and from a consideration of all the circumstances." (Elliott on Contracts, sec. 1543.)

See, also, *Pacific Timber Co. v. Iowa Wind Mill & Pump Co.*, 135 Iowa, 308, 112 N. W. 771; *Alling v. Trevor*, 25 Misc. Rep. 390, 54 N. Y. Supp. 772; *Cunningham v. Cohn*, 14 Misc. Rep. 12, 35 N. Y. Supp. 125; *Stewart v. Thayer*, 170 Mass. 560, 49 N. E. 1020; *Jennings v. Camp*, 13 Johns. (N. Y.) 94, 7 Am. Dec. 367; *Edward Thompson Co. v. Washburn*, 191 Mass. 6, 77 N. E. 483.

It follows that the judgment of the trial court should be reversed, and the cause remanded.

By the Court: It is so ordered.