### SNYDER v. NOSS et al.

No. 14403—Opinion Filed March 11, 1924.

Rehearing Denied May 13, 1924.

**1. Contracts—Construction—Entirety.**

A contract is entire when its terms, nature,

and purposes show that it is contemplated and intended that each and all of its parts, material provisions, and the consideration are common each to the other and interdependent. The intention of the parties is to be ascertained from the language used, the subject-matter, and a consideration of all the circumstances.

2. Same—Right to Recover for Drilling Well —Conditions.

One who seeks to recover the entire contract price for the drilling of an oil well, under a contract by which the completion of the well according to terms of the contract was a prerequisite to the party bringing the action to receive payment of the contract price, must show substantial performance of the contract before he is entitled to recover.

3. Contracts—How Written Contract Altered.

A contract in writing can be altered only by a contract in writing, or by an executed oral agreement, and not otherwise. Section 5081, Comp. Stat. 1921.

4. Same—Action to Recover for Drilling Well—Pleading.

Where one alleges full compliance in his petition and the answer denies full compliance and points out wherein the contract was not complied with, held, error to permit the plaintiff to reply admitting that the well was not drilled according to contract, but alleging that the changes were made with defendant's consent and agreement.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Okmulgee County; John L. Norman, Judge.

This is an action by W. H. Noss against Warren K. Snyder et al., on a written contract entered into between said Noss and Snyder for drilling a certain oil well on the south one-half of the southwest quarter of the northeast quarter of the southwest quarter of section 36, township 13 north, range 11 east. The contract is set out in plaintiff's petition as exhibit "A" and is made the basis of plaintiff's action. Said contract is as follows:

"This Memorandum of Agreement, made and entered into, on this 24th day of September, A.D. 1920, in duplicate by and between Warren K. Snyder, of Oklahoma City, Oklahoma, party of the first part, and W. H. Noss, of Okmulgee, Okmulgee county, Oklahoma, party of the second part, witnesseth;

"That party of the first part has employed, and does hereby employ party of the second part, upon the terms and conditions hereinafter written, to drill a well for oil and gas on the following described location, to wit:

"The fourth location west from the southeast corner on the south line in the southwest quarter of section 35, township 13, north of range 11, east of the Indian Meridian in Okmulgee county, just across the county line from Okfuskee county, the said well to be drilled to a depth of 3,000 feet unless oil or gas is found in paying quantities at a lesser depth, and first party concluded to stop drilling at lesser depth by reason of procuring a commercial oil or gas well. The party of the first part is to furnish a rig, the bunk houses, all fuel necessary for drilling the well and pulling casing, and other work, but not to furnish the gas for cooking purposes, and is to furnish all casing delivered at the well free of all cost to the party of the second part. Party of the first part is to furnish all water line and lay the same, an engine and fuel therefor and pay a pumper, but party of the second part is to pump the water to the rig and when sufficient water is in creek near rig is to pump same at his own expense, using steam power therefor. It is agreed between the parties hereto that the well or hole is to be drilled of sufficient size to set 8¼ inch pipe or casing through the second salt of water sand, the bottom of which is found at 2,340 feet in this field, so that if a well should not be drilled in paying quantities for oil or gas before the depth of 3,000 feet is reached, that the hole will be of sufficient size to drill deeper to the Wilcox sand, which is found in field about 3,490 feet, if party of the first part concluded to drill to said Wilcox sand. Party of the second part agrees to move his drilling tools forthwith to said location and to begin forthwith to drill said well and hereby agrees to drill said well with due diligence and dispatch, unavoidable delays alone excepted, to the depth of 3,000 feet, and as much deeper as may be necessary to reach the Wilcox sand below 3,000 feet, if first party concludes to drill deeper, unless oil or gas be found in paying quantities at a lesser depth, to be determined by first party.

"The first party agrees to pay second party the agreed price of $3.00 per foot for drilling said well, which shall include the running and setting of all casing to pipe to the depth of 3,000 feet, which shall be at the expense of second party and in addition thereto, first party agrees to pay second party at the rate of day work hereinafter following for all reaming or underreaming that may be necessary to be done in said well and to pay the cost or rental of the reamer or underreamer, but second party agrees to procure the same and haul same out in his truck, also to haul out the engine for pumping water and in the event any nipple or nipples should be required in the drilling, second party agrees also to haul them out to the rig free of expense to first party.

"It is agreed that first party shall pay on the contract price of drilling, when second party shall have drilled and set the casing to a depth of 1,000 feet, $1,000 on account; and when spud in to advance as a part of said $1,000 the sum of $500 to enable second party to pay for hauling his outfit to the location; when drilled to the depth of 2,000 feet, the additional or further sum of $1,000 on account, and when drilled to the depth of 2,500 feet, with the 8¼ inch casing set, the further and additional sum of $1,000.00 on account, and when the said well shall be completed, within five days thereafter, whether the same be a producer or a dry hole, to pay the second party all sums or balance due under this contract.

"It is further stipulated and agreed that in the matter of reaming or underreaming, that the first party will pay for the casing crew.

"It is further expressly agreed between the parties hereto that all fishing jobs on said well shall be at the expense of the second party and that said second party shall have the right to reject any and all casing furnished him or refuse to run casing, unless it is satisfactory to second party.

"It is further agreed that in the event a dry hole should be the result of the drilling operations on said premises that the party of the second part shall pull all casing and plug the hole, party of the first part furnishing the casing crew therefor, at the expense of the party of the first part, the said party of the second part to be paid for pulling casing and plugging the hole at the rate of $60 per day for day work of twelve hours or $120 per day, day work for twenty-four hours and at the same rate of all other day work comprehended by this contract.

"It is further agreed in the event that the well should be drilled to a greater depth than 3,000 feet, it shall be drilled as day work at the above last named rates.

"It is further agreed that the party of the first part shall pay for the casing crew for pulling the pipe, after the well has been completed, in the event it is either a producer or a dry hole, and shall also pay for the casing crew in the matter of pulling pipe and setting back the pipe in the hole on all runs made, where reaming or underreaming is necessary.

"First party shall allow second party after spudding in waiting time at the rate of $60 per day for 24 hours, which waiting time shall be caused exclusively by party of the first part but no charge shall be made for any part of the day waiting time less than 24 hours, neither shall waiting time be charged party of the first part that may be caused by shutting down of work occasioned by want of gas, freezing of pipes, or trouble to the water line, or engine used to pump water. It being the intention of this clause

to compensate party against loss, but not to penalize party of the first part for slight delays, suspensions or breakdowns that almost invariably happen to some extent in the drilling of wells.

"First party shall bear the expense of fishing jobs when the same is occasioned solely by reason of defective, or collapsed casing furnished by party of the first part.

"It is agreed that this contract is a complete one, and fully covers and comprehends the liability of each party hereto, and fully describes the work and duty to be performed by each, and that no other charge or claim shall be made, except under the provisions hereof.

"In witness whereof, the parties hereto have hereunto set their hands in duplicate on this the 24th day of September A.D. 1920.

"Warren K. Snyder,
"Party of the First Part.
"W. H. Noss,
"Party of the Second Part."

After the hole was drilled to the depth of 3,021 feet, Noss filed a lien on the leasehold estate and personal property thereon and attached to said lien what purported to be an itemized statement of the balance plaintiff, Noss, claims to have been due him for drilling said well. After setting up the contract and lien plaintiff alleges in his petition:

"That the plaintiff has performed all the conditions and requirements contained in said contract in accordance with the terms thereof; that said oil well was drilled to a depth of 3,021 feet and was completed to such depth on December 20, 1920, at which time further drilling was suspended by reason of acts of said defendant, Snyder, in failing to advise plaintiff whether or not he desired said well drilled any deeper; that the itemized account, as shown in exhibits 'B' and 'C,' is correct and that there is due this plaintiff from said defendant the sum of $6,711.86 with interest thereon from December 20, 1920, at the rate of six per cent. per annum."

"Plaintiff also alleges:

"That it has become necessary for the plaintiff to employ counsel to prepare his said lien and to bring this action to foreclose same, to protect his interest in the premises; and for which services plaintiff claims the further sum of $1,000 as his reasonable attorneys fee and prays judgment accordingly."

To this petition, the defendant, Snyder, filed his answer which consists of a general denial of all allegations and matters stated in said petition except those hereinafter specifically admitted, and alleges that the said action was prematurely brought for the reason that it was brought within 60 days

from and after the date of the last item charged, and alleges that this is a jurisdictional matter and said suit should be abated. The defendant admits that he entered into the contract hereinbefore set out, and after reciting the terms of the contract, as to the size of the pipe and the depth at which it should be set, alleges that plaintiff entirely and wholly disregarded the terms of said written contract and did not drill the hole to the depth of 2,340 feet or a similar depth to carry the 8¼ pipe through the salt sand, but that the said plaintiff in violation of said contract negligently drilled said hole so as to set the said 8¼ inch pipe at 1,805 feet instead of 2,340 as provided in said contract, and that by reason of such carelessness and negligence in setting the pipe before it was through the salt sand caused the salt water to leak into the hole so that further drilling could not be had, and said pipe had to be pulled out of said hole and the hole reamed and underreamed so as to set the pipe at a lower depth and that instead of drilling to 2,340 feet, the plaintiff finally set the pipe at 1,939 feet instead of 2,340. Defendant then takes up the various items of expense of pulling the pipe, underreaming and rerunning the pipe, and alleges that all of that work would have been unnecessary if the hole had been drilled according to contract, and that all of the extra expenses charged by plaintiff against this defendant were caused by the plaintiff disregarding the terms of the contract and setting the pipe at 1,939 feet instead of 2,340. Defendant, Snyder, also files and sets up certain items of expense that he had to pay because of the failure of the plaintiff, Noss, to drill said well according to the terms of the contract, and asks to have the same set off against any claim of the plaintiff. To defendant's answer, plaintiff filed a reply consisting of a general denial, and on the day the case was set for trial, plaintiff asked leave to file an amended reply. The defendant objected to the filing of the reply at that time, but the court permitted said reply to be filed which amended reply, omitting the caption, is as follows:

"Comes now the plaintiff, and by leave of the court first obtained, files this amended reply to the answer of the defendant, herein, Warren K. Snyder, and says:

"1. That he denies each and every allegation set forth in said answer except such as may be hereinafter admitted.

"2. He denies that at the time the plaintiff and defendant made and entered into the contract, as alleged by the plaintiff and admitted by the defendant, the log of the well the defendant alleges in his answer, was drilled in the southeast corner of the leasehold estate described in plaintiff's petition, and was never any part of said contract nor was it ever contemplated that the same was a part thereof.

"3. The plaintiff denies that he set the 8¼ inch casing at 1,805 feet as alleged in defendant's answer, but states that he drilled said oil well, in the first place, to a depth of 1,887 feet where he set the 8¼ inch casing, and that he set the same at that depth solely at the order and command of the defendant, because there was salt water in the well which could not shut off without running the pipe and defendant would not incur the expense to run pipe, but ordered the plaintiff to set the said 8¼ inch casing at said depth, thereby abandoning and waving the requirement set forth in said contract, that said 8¼ inch casing was to be set at the depth of 2,340 feet.

"4. The plaintff states that by the terms of said contract, the defendant, at all times, reserved unto himself the discretion to drill past the depth of 3,000 feet and to the Wilcox sand in said well, and if the size of the hole drilled by said plaintiff was not large enough at the time plaintiff completed the same to drill from 3,000 feet to the Wilcox sand, that the fault was and is due to the fact of the defendant in ordering the plaintiff to set the 8¼ inch casing at 1.887; but the plaintiff specifically denies that the said hole is and never has been too small to drill to the Wilcox sand.

"5. The plaintiff specifically denies that he set the 8¼ inch casing in salt sand.

"6. Plaintiff says that by the terms of said contract the defendant was bound to pay for all fishing jobs if caused by defect in any casing, and that after plaintiff set the 8¼ inch casing at 1,887 feet, and after he had made 52 feet in the reduced hole he found that the 8¼ inch pipe was leaking; that plaintiff investigated the pipe and found that a joint of 8¼ inch pipe, about 400 feet from the bottom, was defective and leaking, and that the defendant was immediately notified of said condition and he ordered the plaintiff to pull the pipe, which the plaintiff accordingly did; and was running all of said 8¼ inch casing at the risk of the defendant, because the same was defective and in bad condition, and that the said casing had been rejected by the plaintiff on account of such condition, but had been ordered by the defendant to run the same at the defendant's risk.

"7. Plaintiff says that by the terms of the said contract the defendant was bound to build and maintain the rig over the well; that he built the same, as required by the contract but failed to maintain the same until the plaintiff complained that said rig was defective and needed repairing, after which the defendant repaired the same; and the plaintiff denies that he ever threatened the defendant to pull the rig in if the defendant failed to make repairs, and

the plaintiff further specifically denies that he was bound by said contract to build and maintain said drilling rig. The plaintiff denies that he ever failed or refused to perform the contract upon which his suit is based, or that he ever failed or refused to complete said well and specifically alleges that he completed said well as required by his contract, and that the defendant failed and refused to perform said contract, in that the defendant failed, refused, neglected and willfully would not pay the plaintiff for completing said well five days after the same was completed, as required by said contract.

"Wherefore, the plaintiff prays judgment as set forth in his amended petition herein, and will ever pray."

After the reply was permitted to be filed, the defendant, Snyder, filed a motion to strike paragraphs 3 and 4 from the reply because the same was a departure. The court overruled the motion to strike parts of the reply filed by defendant, and defendant excepted. The defendant, Warren K. Snyder, then filed his motion for judgment on the pleadings, which motion was by the court overruled, and the case proceeded to trial before the court and a jury. After the jury was empaneled and at the beginning of the offering of the testimony and before any evidence or testimony had been offered, defendant objected to the introduction of any testimony in the case setting up various reasons therefor, which are the same reasons set up in the answer and the objection to filing the amended reply as to why plaintiff should not recover. This objection was overruled by the court, and the defendant excepted. There were many witnesses introduced by the respective parties, but as we are deciding the case on law questions solely, it will not be necessary to review the testimony.

Chas. A. Dickson, Joseph I. Pitchford, and Warren K. Snyder, for plaintiff in error.

O. G. Rollins, A. E. Graham, C. M. Gordon, and Fred M. Carter, for defendant in error.

Opinion by MAXEY, C. This is a suit upon a drilling contract which is set out in the above statement. A reading of the contract heretofore set out will show that it is an entire contract. The contract sets out just how the well is to be drilled and what the driller is to receive for drilling the same. There are certain things that the owner of the well is to furnish. In fact, the contract is intended to cover the duty of each one of the parties thereto and leave nothing to conjecture or speculation. The plaintiff alleges in his petition that he has performed all of the terms of said contract to be performed on his part, and has completed the well according to the terms and specifications of the contract. It is a familiar rule that where one sues on a contract and relies upon complete performance, he must show that he has performed all of the things to be done by him according to the terms of the contract. This court has decided this question a number of times. In the case of Meek v. Daugherty, 21 Okla. 859, 97 Pac. 557, Mr. Justice Hayes laid down the rule covering entire contracts as follows:

"One who seeks to recover the entire contract price for the construction of a wall, under a contract by which the completion of the wall was a prerequisite to the rights of the party bringing the action to receive payment of the contract price, must show full performance of the contract before he is entitled to recover."

Applying this rule to the case before us, we find that the contract provides that the well should be drilled to a depth of 3,000 feet; that the 8¼ inch casing is to be set at 2,340 feet, which was estimated to be the depth of the second salt water sand. The evidence shows, and it is admitted by the plaintiff on the trial, that the 8¼ inch casing was set at 1,939 feet. The 6⅝ inch casing was to be used after the 8¼ inch casing was set, but the 6⅝ inch casing was set at 2,335 feet, five feet short of where the 8¼ inch casing was to be set. It is contended by the plaintiff that these changes from the contract were agreed to by the defendant, but the evidence in our judgment falls far short of establishing any such agreement. It appears from the evidence that one Reed was employed by the defendant to haul some casing from Okmulgee out to the well, and that he was there about the time the 8¼ inch casing was set and agreed to it for the defendant, but there was no evidence offered on the part of the plaintiff to show that Reed had any authority to agree to such changes, and on the trial, the defendant Snyder testified that Reed had no authority to agree to any changes. In fact, he had no authority whatever to make any changes in the contract. Reed testified that he had no authority to agree to any changes, and that he did not, in fact, agree to any changes. Under this state of the evidence, we must hold that the plaintiff failed to make proof that the defendant agreed to the setting of the pipe at 1,939 feet. Our statutes provide how a contract in writing may be changed. Section 5081, Comp. Stat. 1921, reads as follows:

"Written contract altered, how. A contract in writing may be altered by a con-

tract in writing, or by an executed oral agreement, and not otherwise."

This contract was not changed by a contract in writing, nor was it changed by an executed oral agreement. It was not even altered by consent of the parties in writing. The evidence shows that Snyder did not know where the 8¼ inch pipe was set until long after it was set and the well drilled with a smaller hole down to about where it was abandoned. So it could not be contended that it was changed by an executed oral agreement. It is a general rule that where a person sues on a written contract he must show that he has substantially performed the contract according to the terms thereof. And if changes or alterations have been made, he must show an excuse for such alterations before he can recover. In the case of Davidson v. Gaskill, 32 Okla. 40, 121 Pac. 649, Gaskill entered into a contract with Davidson to do certain stenographic work in Davidson's office from the first of July, 1907, until the coming in of statehood for a certain part of the net earnings of the office between the 1st of July and the 16th of November when Oklahoma was admitted as a state. Gaskill was sick part of the time and furnished a substitute, and about two weeks before the coming in of statehood Gaskill quit and failed to complete his contract by working up to the 16th. The court held that the contract was entire and indivisible; that the contract was not fully performed; that the suit being on an entire and indivisible contract, plaintiff was not entitled to recover; that sickness in the absence of the provision in the contract to the contrary will not authorize a recovery upon an entire and indivisible contract not performed. In the case of Dunn et al. v. T. J. Cannon Co., 51 Okla. 382, 151 Pac. 1167, in the first paragraph of the syllabus the court said:

"A contract is entire when its terms, nature, and purposes show that it is contemplated and intended that each and all of its parts, material provisions, and the consideration are common each to the other and interdependent. The intention of the parties is to be ascertained from the language used, the subject-matter and a consideration of all the circumstances."

This being an entire contract, the plaintiff is not entitled to recover unless he can show substantial performance of the contract according to its terms. If he relies upon alterations that were made in the performance of the contract, he must show that they were made in accordance with the rules of law laid down above, and if he relies on such changes he should allege in his petition that the alterations were made in accordance with such rules. But in this case, the plaintiff alleges a full performance of the contract, and when defendant answers and sets up a failure on the part of the plaintiff to fully perform the contract, the plaintiff files a reply in which he admits that there were alterations made in the contract, but alleges that defendant agreed to them. There was a motion to strike these parts of the reply on the ground that it was a departure. This motion should have been sustained, for the reason that when a plaintiff sues on an entire contract and alleges complete performance he must prove his case, as made, and has no right to set up things in a reply that he ought to have put in his petition. A bad petition cannot be made good with a reply is a maxim of code pleadings that every lawyer ought to know. There was a great deal of testimony introduced on the trial of this case that it is unnecessary to notice. Under the view of the case that we have arrived at, plaintiff had undertaken to recover for pulling pipe, underreaming and running his pipe, when they were setting the 8¼ inch casing at 1,939 feet instead of at 2,340 feet as provided in the contract. He also charges for waiting time during this work. In fact, he has charged the defendant with everything that he did in drilling said well that he would have been entitled to if he had completed the well according to the contract.

The case of Lane v. Miller Lbr. Co. et al., 101 Okla. 14, 222 Pac. 968, is the latest case construing actions on contract and we have examined it and the facts in that case and the instant case are so different that this opinion in no way conflicts with that case. So under our view of the case, it will not be necessary to notice these various claims for extras, etc.

We are compelled to hold, that under the record in this case, the plaintiff having sued on an entire contract and failed to show full performance, he is not entitled to recover, and the case should be reversed and remanded to the trial court, with directions to grant a new trial.

By the Court: It is so ordered.