## BARNSDALL NAT. BANK et al. v. DYKES, Rec.

No. 17619. Opinion Filed July 17, 1928.

Rehearing Denied May 14, 1929.

A. M. Widdows, John T. Craig, and Frank T. McCoy, for plaintiffs in error.

Robert B. Keenan, for defendant in error.

FOSTER, C. This action is based upon a contract made and entered into on the 12th day of November, 1923, between the Barnsdall National Bank, signed by its president, G. R. Little, and cashier, H. R. Little, as parties of the first part; the First National Bank of Barnsdall, by L. A. O'Brien, president, and L. D. Gray, vice president, as parties of the second part; and G. R. Little, H. R. Little, John Javine, Jr., and G. E. Gibson, on their own behalf, designated as parties of the third part.

The contract provided, in substance, that the First National Bank should take over all of the assets and assume all of the liabilities of the Barnsdall National Bank, including a lot designated as lot 9, block 17, of the original town of Barnsdall; that the Barnsdall National Bank was in a failing condition, and was insolvent, and that its vice president and managing officer had misappropriated its funds, and that it was unable to longer continue as a banking institution. All of the assets of the bank are listed in the contract.

There is also a list of securities in the form of notes and bonds in the sum of $27,833.98, which is designated as "bad assets," together with a list of securities in the sum of about $7,100, which is designated as "doubtful or objectionable assets," and a third list in the sum of over $82,000, which is designated as "good assets."

The Barnsdall National Bank and the parties of the third part guarantee all those assets listed as "bad assets," in that if the same are not collected within 60 days after the execution of the contract, they will pay the First National Bank for the same and have the said assets assigned to these parties.

The contract further provides that the First National Bank shall use reasonable diligence in attempting to collect or liquidate the said bad assets, and in doing, so, will not extend any of the notes without the consent of the parties of the third part.

It further provides that so far as the real estate above mentioned is concerned, they will take over said real estate and assume all the indebtedness against it, and will pay to the parties of the third part the sum of $7,700 in cash.

The petition in this case alleges a default in the performance of the terms of the contract, in that the 60 days have expired, and the defendants have failed and refused to pay for the bad assets above referred to, and that the same have not been collected.

As a defense to this action on the contract, the Barnsdall National Bank, G. R. Little, and H. R. Little filed their answer, in which they first deny all the allegations of plaintiffs' petition, and deny the execution of the contract; and as further defense state that the contract was entered into under fraud and duress, practiced on these defendants at the time and before the execution of the contract; that said duress, threats, intimidations, and false and fraudulent representations consist of statements made by the bank examiner for the United States in the presence of the officers of the First National Bank at the time of the execution of said contract. They further deny in their answer that the contract is binding because there was no authority given to either of the officers of the two banks to make and execute the contract; and, further, that the plaintiff, First National Bank, has never performed its part of the contract, and has failed, neglected, and refused to endeavor to collect the notes mentioned in said contract and listed as bad assets.

To this answer the First National Bank files its reply in the form of a general denial, and upon a trial of the case, before a jury, a judgment was rendered in favor of the plaintiff, from which the defendants Barnsdall National Bank, H. R. Little, and G. R. Little appeal. The parties will be referred to as they appeared in the trial court.

Six assignments of error are set up by the defendants, as follows: (1) That the defendants' demurrer to the evidence and the motion for an instructed verdict should have been sustained. (2) That it was error for the court to permit the question of waiver to enter said case by means of evidence, instruction, and argument of counsel, as the

same was not within the issues. (3) That the court erred in giving certain instructions over the objections of the defendants and refusing certain requested instructions. (4) That it was error for the court to direct a verdict against the defendant Barnsdall National Bank for the reason that the plaintiff failed to make a case against any of the defendants. (5) That the judgment rendered by the said court is erroneous. (6) That defendants' motion for a new trial should have been sustained.

In defendants' brief, they argue the first proposition under two headings—that the demurrer should have been sustained, and the instructed verdict should have been given: First, for the reason that the contract was not sufficiently identified and no proper authority was shown for its execution; and second, that there was no evidence that the cash consideration of $7,700, as provided in the contract, had been paid by the plaintiff.

As to the first proposition under this assignment of error, the evidence shows that the president and cashier of the two banks executed this contract, and that they were the officers of the bank at the time they executed it, and that the signatures on the contract were genuine. There is some evidence that they were authorized by a majority of the board, and that a resolution was passed giving such authority to the officers. So far as the defendant bank was concerned, there was no resolution introduced, but a purported copy of such a resolution was introduced, and some of the witnesses testified that they were present when the resolution was passed, it being contended, however, that since the bank was selling all of its assets, the authority must come from the stockholders, and there seems to be no testimony indicating a meeting of the stockholders for the purpose of authorizing the sale.

In support of this proposition, the defendants cite numerous cases, holding, as a general rule, that the managing officers of a corporation have no power, without authority from the board of directors, to pledge or sell corporate property. Quaker Oil & Gas Co. v. Jane Oil & Gas Co., 63 Okla. 234, 164 Pac. 671; First Nat. Bank of Clifton v. Clifton Armory Co. (Ariz.) 128 Pac. 810; Citizens Security Co. v. Hammel (Cal.) 112 Pac. 731; De La Verge Refrigeration Machine Co. v. German Savings Instruction, 175 U. S. 40, 44 L. Ed. 65, and several other cases.

However, it appears that the defendant bank accepted, the contract by delivering over its assets to the plaintiff bank, and by permitting the plaintiff to assume its liabilities. A corporation cannot permit the performance of a contract, receive its benefits, and then escape liability on the grounds that the contract was ultra vires and unauthorized. Ardmore Hotel Co. v. Klein Iron & Foundry Co., 104 Okla. 125, 230 Pac. 734.

Where a corporation permits work to be done under a contract with its officers, it cannot accept services and then avoid the contract on the grounds that the officers had no authority to enter into the contract. Rainbow Oil & Gas Co. v. Barton, 70 Okla. 271, 173 Pac. 1135.

It therefore follows that, under the facts in this case, the defendants are estopped from denying the liability of the contracts on the grounds that the same was unauthorized.

As to the second proposition under defendants' first assignment, that there was no direct evidence that the cash consideration of $7,700 provided in said contract had been paid, this presents to our minds a more difficult question.

Plaintiff's petition alleges that it had in every detail performed and complied with the terms and provisions of the contract. However, there is no direct testimony that it paid the $7,700. This was a part of the purchase price of the real estate mentioned in said contract, but it appears to us that the contract is not a divisible one. All of these allegations were denied by the defendants under oath.

Defendants contend that where a party declares upon a contract, without any count upon a quantum meruit basis, that he is bound to prove that he has fully performed the terms of the contract, and that he must show, before he can recover under the contract, that every provision thereof has been complied with. Davidson v. Gaskill, 32 Okla. 40, 121 Pac. 649; Snyder v. Noss, 99 Okla. 142, 226 Pac. 319; Hamilton v. Blakeney, 65 Okla. 154, 165 Pac. 141; Dunn v. Cannon Co., 51 Okla. 382, 151 Pac. 1167; Froebe-Brisco Const. Co. v. Board of Com'rs of Garvin County, 106 Okla. 153, 233 Pac. 468.

In response to this contention, the plaintiff contends that the evidence shows that it has performed all the terms and conditions of the contract, and cites the testimony in which the officers of the plaintiff bank testified that they had taken over all the assets and assumed all the liabilities, had

paid the depositors, had taken over the building and the fixtures, and that the Barnsdall National Bank did not transact any business after the execution of the contract.

Plaintiff further contends that defendants stood by, and without raising any objection permitted the plaintiff bank to take over the assets and proceed to carry out the terms of the contract, and then cites in support of its contention sections 5027 and 5028, C. O. S. 1921, in which it is provided that a written instrument is presumptive evidence of consideration, and that the burden of showing want of consideration lies with the party seeking to avoid it. And in support of the doctrine announced in the sections last above referred to, it cites the following cases: Ball v. White, 50 Okla. 429, 150 Pac. 901; St. L. & S. F. Ry. Co. v. Bruner, 52 Okla. 349, 152 Pac. 1103.

The cases are not in point. There is no contention as to the consideration of the contract, the only question being as to whether or not the considerations set up in the contract were performed, yet, under the facts in this case we believe that since the defendants allowed the plaintiff to take over the assets of the bank, assume its liabilities, take possession of and occupy the real estate and pay off its depositors, there would under these circumstances a presumption arise that all the terms of the contract had been fully complied with by the plaintiff in the absence of proof to the contrary.

There seems to be no direct testimony in the record as to whether or not the $7,700 was paid. Plaintiff did not prove that it was paid, neither did the defendants prove that it was not. The contract provided that the $7,700 was to be paid when the deed to the real estate was delivered. There is no allegation nor proof in the pleadings as to whether or not the deed has been delivered. Under all the circumstances we believe the correct rule is to assume the $7.700 had been paid. We hold the court did not err in refusing to direct a verdict.

The second assignment of error is that the court permitted evidence, instructions, and argument of ratification and waiver, and that the same were not within the pleadings.

The petition in this case is based upon the contract. The answer, among other things, sets up that the signatures to the contract were procured by fraud, duress, intimidation, and false representations. The reply to the answer is a general denial. The evidence, which was introduced on re-buttal by the plaintiffs, was to the effect that the defendants G. R. Little and H. R. Little, the next day after they signed the contract and on several occasions after the signing of the contract, expressed themselves satisfied, and that they intended to carry out the terms and conditions of the contract.

This testimony was objected to on the grounds that the same was incompetent, irrelevant, and immaterial, and not proper rebuttal, and after the time of the controversy.

The court also instructed the jury as follows:

"You are instructed that a contract signed under duress may be ratified by the oppressed party, and that an offer to perform the terms of the contract when the means of duress are no longer present, constitutes a waiver of the original wrong, if any, and a ratification of the contract."

This instruction was objected to by the defendants.

The court permitted the plaintiff to argue this evidence, and this instruction to the jury, over the objection of defendants, that same was not within the issues.

No waiver or ratification is pleaded by the reply of the plaintiff. It seems to be well settled that waiver or ratification must be specifically and definitely pleaded, and, if not so pleaded, evidence of such ratification or waiver is not admissible. Wolff v. German-American Life Ins. Co., 60 Okla. 113, 159 Pac. 480.

The objection to the testimony in this case, as above indicated, was upon the grounds that the same was incompetent, irrelevant, and immaterial, and not proper rebuttal, and after the time of the controversy.

The evidence was admissible on the ground of rebuttal, because it tended to prove that no fraud was used at the time of the making of the contract as testified to by the defendants. It was also proper testimony, in our opinion, to show a ratification of the contract if the same had been included within the pleadings. The objection made to said testimony was not, in our opinion, sufficient to call the court's attention to the fact that the testimony was not within the issues.

Where the trial court's attention is not called to the absence of such a pleading by proper objection to the testimony, the pleading will be considered as amended, if an amendment would have been proper, and

especially where no injury is shown to have resulted to the complaining party. Throm v. Hollister, 92 Okla. 233, 219 Pac. 115.

In the case of Dawkins v. Peoples Bank & Trust Co., 117 Okla. 181, 245 Pac. 594, this court, in the body of the opinion, says as follows:

"It is the duty of counsel to state his specific objection to the introduction of the particular evidence offered, to the end that the court may be fully advised, and pass upon the point raised, and where the specific point was not called to the trial court's attention and that court given the opportunity to pass upon the same, the objection will not be considered by this court."

The question involved in the last case is not the same as the case at bar. In that case, the objection was to the introduction of a note and mortgage, the objection being that the same was incompetent, irrelevant, and immaterial. The question attempted to be raised by this objection was that there was not sufficient preliminary proof offered to admit the note and mortgage in evidence, the court holding that the objection was not sufficient.

In the case of Muskogee Elec. Traction Co. v. McIntyre, 37 Okla. 684, 133 Pac. 213, it was held that objection to the testimony of the husband of the plaintiff, on the grounds that the testimony was incompetent, irrelevant, and immaterial, was not sufficient to raise the incompetency of the witness to testify. In that case the witness was competent to testify as to certain issues because he was acting as agent for his wife, who was incompetent to testify to the particular issue on account of being the husband of plaintiff. The court held that the incompetency of the witness must be particularly called to the attention of the court or the objection would be waived, and that the general objection as above set out was insufficient.

In the case at bar, it appears to us that since the testimony was good for one purpose, and it was not specifically called to the court's attention at the time of the introduction of the testimony that the same was not within the issues, the pleadings will be considered as amended so as to also include the question of ratification and waiver.

If the pleadings are considered as amended, then the instruction as above given was not improper, because it was within the issues as then formed. An amendment to the pleadings would certainly have been proper in this case had it been asked for at the time the testimony was presented, and we believe that if proper objection had been made the court would have permitted an amendment.

It is true that defendants objected to the argument of counsel for the reason that the same was not within the issues, but proper evidence having been introduced without proper objection, we believe this objection came too late.

After the motion for a new trial was overruled, the court permitted the plaintiff to amend its petition so as to allege waiver and ratification, and it is contended that this amendment came too late and is an admission that the original petition was not sufficient; and further, even though the amendment was correct, that it should have been to the reply rather than to the petition.

It is not necessary for us to determine whether the offered amendment came too late or not, nor is it necessary for us to determine that the amendment should have been made to the reply instead of to the petition, since we hold, as above set out, that the pleadings will be considered as amended at the time the testimony was offered.

It is next contended that an argument of counsel was made out of the record which was prejudicial to the rights of defendants; the argument being as follows:

"I just want to tell you gentlemen that if you so find for the plaintiff in this case, it may mean a failure of the First National Bank of Barnsdall, with a resultant loss to thousands of depositors in that bank."

Considerable latitude is allowed attorneys in making arguments, and it is contended that, owing to the large amount involved, it was a reasonable deduction from the testimony that if the bank failed to collect the amount due, in all probability it would fail, and of course the failure of the bank would result in a loss to many depositors. As true as this may be, and considering that the statement is absolutely true and might even be considered as a reasonable deduction to be made from the testimony, yet it cannot possibly be contended that it presents any reason for the granting of a verdict in this case. If the defendants were not legally bound to pay, the fact that every man in the whole state would lose money, and that every depositor would become bankrupt, would not justify a jury in returning a verdict. The argument, we believe, was improper. The court should have instructed the jury that the same was improper.

When this argument was objected to, the court told the jury, in substance, that they should not consider any argument of counsel outside the record. However, if the argument was a substantial violation of defendants' rights, this statement to the jury does not comply with the rule adopted by this court. He should have instructed the jury that the argument was improper and not to consider it.

Will this argument, although improper, cause a reversal? We think not.

In the case of Culbertson v. Alexander, 17 Okla. 370, 87 Pac. 863, the court says :

' Such a statement by counsel was improper, and the court should have sustained defendants' objection thereto, but under the facts and circumstances in this case, we are of the opinion that the remark was not of such a character as would justify a reversal of this cause."

It is a general rule in this state that the erroneous refusal of a trial court to sustain an objection to improper argument will not require a reversal of the case, unless under the facts and circumstances of the particular case the same has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right. Anthony v. Nourse, 34 Okla. 795, 127 Pac. 491; Producers' Oil Co. v. Eaton. 44 Okla. 55, 143 Pac. 9; Muskogee Elec. Co. v. Cox, 49 Okla. 365, 153 Pac. 125; Hooker v. Wilson, 69 Okla. 43, 169 Pac. 1097.

From all the facts and circumstances in the case at bar, we do not believe that the defendants suffered any substantial injury by reason of the improper remarks of the attorneys, and for this reason the case will not be reversed under the rule as above set out.

The third objection is that the court erred in giving certain instructions. The testimony on behalf of the defendants shows that prior to the time of the execution of this contract, the defendant Barnsdall National Bank was in an insolvent condition, and that the bank examiners for the United States government had come to Barnsdall for the purpose of making an examination of both of these banks. There is some dispute as to whether it was for the purpose of consolidation or a customary examination. At any rate, soon after they arrived and began their examination of the Barnsdall National Bank, Karl Hammer, who was managing officer and vice president of the Barnsdall Bank, suddenly disappeared, and

upon an examination of the bank it was found that he had appropriated to his own use some $45,000 of the bank's money. The officers of the Barnsdall Bank were immediately called together, and after considerable negotiations between the officers of the Barnsdall Bank and the First National Bank, the contract above referred to was executed.

It appears from the testimony of the defendants that during these negotiations one Mr. Peterson, bank examiner, made certain statements to H. R. Little and G. R. Little concerning their liability in case the Barnsdall National Bank was compelled to be liquidated as provided by law. The statements were to the effect that unless G. R. Little and H. R. Little signed the contract, H. R. Little would be sent to the penitentiary for five years, and would be fined in the sum of $5,000; that these statements were made in the presence of, and with the knowledge of, the officers of the First National Bank, and that acting under fear of said prosecution they executed the contract against their free will. but it was executed for the reason that they were afraid that H. R. Little would be sent to the penitentiary.

This testimony was disputed by the officers of the plaintiff, and also by the bank examiner, and the question of whether or not the contract was executed under duress was submitted to the jury under the instruction hereinafter complained of, together with other instructions.

Under this statement of the record, the defendants first object to instruction No. 3, which is as follows:

"You are instructed that the assuming of the liabilities of the Barndall Bank by the plaintiff was a sufficient consideration for the execution of the contract upon which this suit is based, both as to the Barnsdall National Bank and G. R. Little, H. R. Little, G. E. Gibson and John Javine, Jr."

It is contended that this instruction was erroneous for the reason that the testimony failed to show that the plaintiff had paid the $7,700. This was only a partial failure at most. But since we have heretofore found that, under the record in this case, it must be assumed that the $7,700 was paid, as well as the other terms and conditions of the contract complied with, the court did not err in giving this instruction.

It is next contended that the court erred in giving instruction No. 2, which is as follows:

"The execution of the contract in question having been admitted, the burden is upon the defendants H. R. Little and G. R. Little, to prove by clear, strong and convincing evidence their defense in this case, to wit, that the plaintiff herein procured the signature to said contract of H. R. Little and G. R. Little by making threats of criminal prosecution towards the defendant H. R. Little, and by the use of duress and menace in the procuring of the signatures to said contract of the defendants H. R. Little and G. R. Little."

It is contended that this instruction was erroneous, for the reason that it limited the defense of the defendants G. R. Little and H. R. Little to the sole proposition of criminal prosecution, and that they had under their answer set up four specific defenses: (1) The question of consideration; (2) the want of authority; (3) duress, threats, and intimidations; and (4) the failure to perform the provisions of the contract relative to the collection of the notes. That all of these objections were within the issues, and that by instruction No. 2, as above set out, the defense was limited to the one proposition of threats of criminal prosecution; that these matters were particularly called to the attention of the trial court by defendants' requested instructions Nos. 1, 4, 6, and 9. These offered instructions did cover the points here complained of, but if any error were committed by instruction No. 2, and the failure to give the requested instructions, we believe it was cured by instructions Nos. 10 and 11, which are as follows :

"You are instructed that if you find that the plaintiff has failed to prove by a preponderance of the evidence that the plaintiff has fully complied with the terms and conditions of its contract, your verdict should be for the defendants G. R. Little and H. R. Little."

"If you find from the evidence in this case that the plaintiff has failed to prove by a fair preponderance of the evidence that it has used due diligence in the collection of the notes specified in the controversy under the heading of 'bad assets,' and by due diligence is meant such diligence as the ordinary man would use where it involves his own affairs, then and in that event your verdict should be for the defendants G. R. Little and H. R. Little."

Under this assignment it is contended that the only proposition presented was criminal prosecution, and defendants contend that it is not necessary that criminal prosecution be threatened, but if the threats lead the party to believe that he, or some relative, may be prosecuted, that the same is sufficient.

Under the well-recognized rule in this court, no judgment will be reversed and a new trial granted on the grounds of misdirection of the jury, unless upon examination of the entire record it is manifest that error probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right; that all of the instructions must be considered together and no one singled out.

We have carefully examined all the instructions given by the court, and while several of them, as indicated by the alleged errors hereinabove mentioned, might be erroneous if taken by themselves, yet, when considered with all of the other instructions given, we believe that the entire instructions of the court fairly cover all the issues in this case, and that the matter was fairly presented to the jury, and that no substantial violation of any constitutional or statutory right was made by the court in giving any of said instructions.

It is next contended that the court erred in refusing to direct a judgment in favor of the defendants. This proposition, we think, is thoroughly covered under proposition No. 1, and the plaintiffs in error's brief admits that the same is true, and for that reason we will not further discuss it.

It is next contended that the court erred in allowing interest on the judgment against the defendants G. R. Little and H. R. Little.

The verdict of the jury provided for a judgment of $24,574.44 against each of the defendants G. R. Little and H. R. Little, the same to be credited with any amounts realized from John Javine and T. E. Gibson, and a verdict was granted against the last two named persons in the sum of $3,569.78 each. Upon this verdict of the jury, the court entered judgment in accordance therewith, except that the court allowed interest on the verdict against Little and Little from the date of the contract, and no interest was allowed against Gibson and Javine.

It appears from the record that on January 11, 1924, Javine and Gibson offered to pay to the plaintiff the amount of their liability under the contract, the same, as they contended, being one-seventh of the entire amount. This tender was made to the plaintiff, and from the record was refused. The amount of the judgment against Javine and Gibson was based upon these defendants being liable for one-seventh, and the tender to the plaintiff was apparently held good by the court for the reason that no interest was granted against either of such defendants.

It is, therefore contended that the allowance of interest against Little and Little on the entire judgment was erroneous because it allowed interest on that portion of the judgment found to be owing by Javine and Gibson, which they had tendered to the plaintiff, and therefore themselves became not liable to pay any interest.

The amount owing by Javine and Gibson had not been paid at the time the judgment was granted, and there was apparently no tender of the same into court. Since the judgment against Little and Little was to be credited with whatever sums were paid by Javine and Gibson, we believe that when Javine and Gibson pay their judgments it should be, and it was the intention of the court, to credit the amount paid on the original verdict of the jury against Little and Little, and that upon the payment of said amounts the judgment against Little and Little, so reduced, will draw interest from the date of the contract as provided in the judgment of the court. We find no error in this assignment.

We have examined the entire record in this case, and read with diligence the able brief of plaintiffs in error, but from a consideration of the entire case we find no substantial error was committed. We believe the matter was fairly presented to the jury, and that there is sufficient evidence in the record to sustain the verdict and judgment.

It, therefore, follows that the verdict and judgment of the trial court should in all things be affirmed.

TEEHEE, LEACH, and REID, Commissioners, concur. BENNETT, Commissioner, concurs as to conclusions.

By the Court: It is so ordered.