## HOWARD GREENE TORPEDO CO. v. BIG CHIEF DRILLING CO.

No. 29296.   May 21, 1940.

*102 P. 2d 872.*

Lee B. Thompson, of Oklahoma City, for plaintiff in error.

Jarman, Brown, Looney & Watts and Willingham & Fariss, all of Oklahoma City, for defendant in error.

DAVISON, J.   In the trial court the parties appearing in this court as plaintiff in error and defendant in error were plaintiff and defendant, respectively.

In its petition, the plaintiff alleged that it was engaged in the business of shooting oil wells and sought judgment against the defendant company in the sum of $1,760.83, in which amount said company was alleged to be indebted to it "for goods, wares, merchandise and service in the shooting of oil and gas wells which it sold and delivered to, and performed for the said defendant. * * *" To plaintiff's petition was attached a verified statement of account showing a balance due on said account in the sum sought.

The answer by which the defendant ultimately joined the issues for the trial

of the action was in the form of a general denial.

After the evidence of both litigants had been introduced, the trial judge, on his own initiative, directed the jury to return a verdict in favor of the defendant; and on such verdict entered judgment. After its motion for a new trial was overruled, the plaintiff perfected this appeal.

In our further reference to the parties, their trial court designations will be used.

In attempting to demonstrate the trial court's alleged error in directing a verdict for the defendant, the plaintiff takes the position that the least to be said of the evidence concerning its right to recovery is that it was conflicting, and for this reason should have been submitted to the jury to be weighed.

It appears from the briefs filed herein that just prior to the trial, the defendant paid the plaintiff the sum of $423.14, thus reducing the amount in controversy to the total sum of $1,337.69. This amount represents the portion of the defendant's alleged debt to the plaintiff that is claimed to have been incurred when the second shooting of the well known as the defendant's "Park Place Number One" was undertaken. The items of said expense are described upon the itemized statement attached to the plaintiff's petition, as follows:

"Invoice #2006, Shoot-
  ing Park Place #1
  470 Qts in shot at
  6330′ to 6410′ _____$1,175.00
24 hr. bomb #03540B___    97.00
Sales Tax on Bomb _____     1.94
Cave Catchers #3466;
  3467; 3465; 3468; 3469    62.50
Sales Tax on Cave
  Catchers _____     1.25
Total Invoice #2006_____$1,337.69"

On behalf of the plaintiff our attention is directed to the undisputed evidence showing that the above-described materials were furnished by the plaintiff for the shooting of the well and to the stipulation by the parties that same was done at the instance of the defendant and that the plaintiff's charges were reasonable. It is urged that the proceedings established a prima facie case for the plaintiff and at least entitled it to have said cause considered by the jury.

The defendant denies that the furnishing of materials on open account was the sole and only basis of the plaintiff's alleged cause of action. It is asserted that the plaintiff company was engaged to "shoot" the well and that the purpose of such employment was not only to procure the materials necessary therefor but also to obtain a discharge or explosion in the well by the torpedo company's experts of the explosive materials furnished. This is not denied by the plaintiff and appears to be unmistakably true of the transaction in question, for said company not only furnished the materials described in its petition, but also sent employees of its own, who customarily performed such work, to the well to load same with the 470 quarts of nitroglycerine furnished and then to explode it. It seems to be a matter of speculation as to whether the bomb which plaintiff's employees lowered into the well exploded any of the nitroglycerine torpedoes they had placed therein, but the evidence is undisputed that it did not discharge all of them and that some of them did not explode until after the plaintiff's employees had left the well apparently believing that they had exploded the entire charge and their task was complete. It is the defendant's position that, in view of this proof, the trial court correctly directed the verdict in its favor upon the theory that the arrangement whereby it employed the plaintiff company was in the nature of an "entire" or "indivisible" contract for the shooting of the well, and the latter could recover nothing for having furnished the materials therefor, since it did not complete the shooting.

Generally, one who is employed under an entire or indivisible contract can recover nothing in an action on same when he has not completely performed his obligations thereunder. See 12 Am. Jur. 903; Davidson v. Gaskill, 32 Okla. 40,

121 P. 649, 38 L.R.A. (N. S.) 692. Our decision in this cause, therefore, hinges upon whether the rights and obligations of the parties to the transaction involved herein are governed by such a contract, either express, implied, or both. The formula usually employed in determining whether a contract is "entire" or "indivisible" was set forth in the case of Snyder v. Noss, 99 Okla. 142, 226 P. 319, as follows:

"A contract is entire when its terms, nature, and purposes show that it is contemplated and intended that each and all of its parts, material provisions, and the consideration are common each to the other and interdependent. The intention of the parties is to be ascertained from the language used, the subject-matter, and a consideration of all the circumstances."

From the evidence in the case at bar, it appears that no formal contract was ever drafted concerning the transaction in question. The plaintiff company was engaged to shoot the defendant company's well merely by a verbal and informal request. It does not appear from the pleadings and evidence herein that the plaintiff charged the defendant any sum whatsoever for the shooting of the Park Place well. If any charge was made for this service, it was not entered as a separate and distinct item upon the plaintiff's verified statement of the portion of defendant's account involved herein. The debits appearing thereon apparently represent nothing more than the regular sales price of the materials furnished for the project. It must therefore be concluded that if any remuneration to the plaintiff company for the services of its so-called "experts" in shooting the well was contemplated in its employment by the defendant, the same was included in the prices charged for the materials furnished. Therefore, when we consider that the principal purpose or end to be achieved in the defendant's patronage of the plaintiff was the shooting of the well rather than the mere procurement of materials therefor, and that the consideration, if any, for said work was not separate and apart from, but an inseparable part of, the prices charged for the materials furnished, we must conclude that the shooting of the well and the furnishing of materials for such project were inseparable and indivisible parts of the performance contemplated to be accomplished by the plaintiff company. Consequently, its right to recover upon the special agreement it relied upon herein is nullified, under the rule applicable to entire and indivisible contracts, by the undisputed evidence that the plaintiff company only partially performed the task prescribed for it therein. While it is true, as hereinbefore intimated, that the plaintiff's employees may have been successful in discharging some of the nitroglycerine torpedoes they lowered into the well, it is not claimed that this benefited the defendant to any extent whatsoever, and plaintiff did not seek recovery upon a quantum meruit basis.

In counsel's argument that the conflict in the testimony on various matters injected into the trial warranted a submission of the cause to the jury, our attention is directed to portions thereof which tend to show the plaintiff company was not in complete charge of the preparations of the well for the shooting and that in some matters the plaintiff's employees acceded to the wishes of the defendant's directing agent against their better judgment, and that under such circumstances the plaintiff could not guarantee to explode all of the nitroglycerine placed in the well. Such evidence may present one theory or explanation as to why the one bomb lowered into the well and the efforts exerted by the plaintiff's employees did not accomplish their purpose, but it is not claimed to establish that plaintiff's complete performance or its ultimate explosion of all of the nitroglycerine torpedoes was prevented by the defendant. An examination of the evidence unequivocally induces the conclusion that the real reason the plaintiff company's employees did not fully perform their task and discharge all of the torpedoes they had placed in the well is not that they were prevented from doing so, but

that they thought same were all discharged by the first and only bomb they used. There was an apparent difference of opinion as to this among those watching the operations before same were discontinued, but instead of ascertaining definitely whether or not the entire "load" placed in the well had been discharged and employing other known methods that they had used on at least one previous occasion to assure such a result, the plaintiff's employees (at least tacitly) pronounced their efforts successful and left the well. After a thorough examination of the record we find that none of the evidence, including the plaintiff company's advertisements bearing the words, "All Work at Well Owner's Risk," is sufficient to relieve said company from the consequences of its failure to comply with an implied covenant which in our opinion must be held to have accompanied its contract of employment in this case, namely, that it would explode all of the nitroglycerine that it agreed to and did place in the defendant's well. It was certainly not contemplated by the parties that the plaintiff should load the well with more explosive materials than it could discharge and abandon it for further drilling operations by the defendant with unexploded torpedoes remaining therein, without using the reasonable methods at the command of and within the knowledge of its experts to explode the same.

The plaintiff urges that by failing to challenge the sufficiency of its evidence the defendant conceded same, and therefore it was error for the trial judge to direct a verdict in its favor upon his own initiative. In support of this contention our attention is directed to the familiar rule that a party who during the process of the trial proceedings fails to challenge the sufficiency of the evidence or waives his previous challenge thereto is prevented on appeal from successfully asserting the insufficiency of the evidence to support an adverse verdict. There is no merit in the plaintiff's position and the rule cited does not apply here. The power of the trial court to direct a verdict on its own motion for

one of the party litigants when the evidence fails to establish a cause of action or defense in favor of his adversary is so well recognized that the citation of precedent therefor is wholly unnecessary.

As we have concluded that the trial court committed no error in directing a verdict and entering judgment for the defendant in the present case, said judgment is hereby affirmed.

WELCH, V. C. J., and RILEY, OSBORN, and HURST, JJ., concur.