William E. WARE & Ruth Ware, Husband & Wife, Plaintiffs in Error,

v.

CITY OF TULSA, a Municipal Corporation, Defendant in Error.

No. 37017.

Supreme Court of Oklahoma.

June 18, 1957.

Rehearing Denied July 9, 1957.

947

John C. Moran, Oklahoma City, for plaintiffs in error.

Thomas A. Landrith, Jr., City Atty., Richard K. McGee, R. E. Lavender, K. Bill

Walker, Edmund Lashley, Asst. City Attys., Tulsa, for defendant in error.

DAVISON, Justice.

This is a suit, brought by the plaintiff, City of Tulsa, Oklahoma, against the defendants, William E. Ware and Ruth Ware, for the reformation of a deed, theretofore executed by the defendants to plaintiff, and to quiet title to the realty described by such reformed instrument. The parties will be referred to as they appeared in the trial court. Another original defendant disclaimed and need not be further considered.

The realty which is the subject matter of this litigation is an acreage lying near or within the limits of the City of Tulsa and formerly was occupied and utilized by a brick and tile manufacturing Company. That part thereof which will be herein designated as parcel #1 was an irregularly shaped tract of about eight acres, upon the north part of which was a pit from which shale and clay had been removed for use in making brick. Two smaller adjoining tracts totaling approximately one half acre and which will be referred to as parcel #2, lay in the southeast corner of parcel #1. The description of parcel #1 was by metes and bounds and was quite intricate and lengthy requiring more than a page and half of typing. The description of the two tracts comprising parcel #2 was by section subdivisions and was relatively short. The character of such descriptions made it possible for an average business man to determine at a glance whether a deed or other written instrument referred to and embraced both or only one of said parcels.

In February, 1954, the city council ordained parcel #1 to be a nuisance because of the excavated pit thereon and ordered its abatement. That action together with the fact that the pit could be beneficially utilized by the city for garbage disposal were the motivating forces behind the development of the ensuing events. Negotiations were begun looking toward the acquisition of the property by the plaintiff herein. An exchange of the same for other accepable property, was first attempted. The entire property, consisting of both parcels and specifically described in the appraisement was appraised by duly appointed appraisers who, on July 12, 1954, found the market value of the property to be $19,000. Subsequently, on August 19, 1954 after attempts to make a trade had been abandoned, the plaintiff, by letter written by an assistant city attorney following oral negotiations, made an offer to defendants to purchase parcel #1, specifically described, for $16,000. Then followed written rejections and counter proposals, in none of which was there any indication that any property other than parcel #1 was being considered. This correspondence culminated in a written lease option contract, dated September 10, 1954, whereby the defendants leased parcel #1 to plaintiffs for garbage disposal purposes and granted plaintiff the option to purchase the same for $17,500 and provided generally that the rentals should apply on the purchase price if the option was exercised. The option was exercised. The purchase price was paid. Defendants delivered to plaintiff a warranty deed dated September 30, 1954, wherein parcel #1 was specifically described. The deed was endorsed "OK" by the city attorney, but was not placed of record.

On February 4, 1955, this suit was filed. In its petition, plaintiff alleged that the oral negotiations and agreement of the parties were as to the entire tract consisting of both parcels of land and that through mutual mistake of the parties and through omission of the scrivener only parcel #1 was included in the written contract and deed. Prayer was for reformation and quieting title to both parcels. After issues were joined, trial was had to the court without the intervention of a jury resulting in judgment in conformity with the findings therein which, so far as pertinent here, are as follows:

"1. That the issues are generally found in favor of the plaintiff, City of Tulsa.

"2. That the City officials, including the Mayor, were at all times dealing for the entire tract of land described in plaintiff's petition.

"3. That the defendants, William E. Ware and Ruth Ware, had notice from the appraisers' report that the entire tract of land was being dealt for.

"4. That there was no meeting of the minds of the parties in that an error was made in describing the property and that the defendants Wares knew that there was a difference in the description but may have been justified in assuming that the difference in description was justified in the difference in price.

"5. That the City failed to prove by preponderance of the evidence that there had been any fraud or inequitable conduct and that, therefore, the defendants Wares should not be penalized by the forfeiture of the triangular tract of land in question.

\*       \*       \*       \*       \*       \*

"7. That the said parties shall be returned to their respective positions they occupied prior to the alleged sale, as no contract was ever entered into.

"8. That the City of Tulsa is in legal and lawful possession of the entire tract and has been so in possession shall continue in possession under its power of eminent domain.

"9. That the defendants, William E. Ware and Ruth Ware, would normally be ordered to return the purchase price, but inasmuch as the City is in possession of the said property they shall retain the purchase price until further order of this court.

"10. That the City should and is hereby ordered to amend its petition and to proceed under the statutes of this State providing for condemnation of real property and that the Court, upon proper demand, shall appoint appraisers to appraise the value of the entire tract of land."

From that judgment, defendants have perfected this appeal.

At the outset of a consideration of this case certain facts stand out in importance. After negotiations for an exchange of the property here involved for other property belonging to plaintiff had fallen through, plaintiff opened the negotiations for purchase of the property by a letter and offer to purchase written by the assistant city attorney to the defendants on August 19, 1954. The description of the property which plaintiff offered to purchase was an exact description of parcel #1 and had been furnished to the writer by the city engineer. Defendants had no part in the preparation of such description. That same description was carried through and used in the contract and the deed. The trial court in paragraph 3 of the judgment found that, because of the previous appraisers' report, the defendants knew there was a mistake and that "the entire tract of land was being dealt for." In paragraph 4 it was found that the defendants "knew that there was a difference in description but may have been justified in assuming that, the difference in description was justified in the difference in price." For the same reason it must necessarily follow that plaintiff also knew of the difference in description. But plaintiff was not justified in its knowledge of that difference because it also knew the reason why the amount of its offer differed by $3,000 from the value of the property as fixed by the appraisers.

It would be logical to carry this line of reasoning to the conclusion that, if any misleading was done, it was perpetrated by the city. Defendants' property had a large intrinsic value of the city because of its suitability for garbage disposal. The city declared it a nuisance and ordered it abated which would entail considerable expense to defendants. The city then started negotiations to trade for it resulting in its appraisal at $19,000. After a trade could not be negotiated, the city offered to buy for approximately 85 cents on the dollar of its

appraised value by an offer wherein the property was knowingly misdescribed.

■ Rather than reach such a conclusion of sharp practice by the City, we are convinced that the record in this case discloses a transaction between intelligent parties on an honest basis for a tract of land (parcel #1) well known to both parties, on the ground and by legal description also; that they made a fair and mutually understood contract which was subsequently properly executed in full by the payment of the purchase price on one hand and the execution and delivery of the deed on the other.

■ Although plaintiff's petition seeks reformation of the deed, the judgment of the trial court, in effect, rescinded the contract to which plaintiff would in no event be entitled without a reconveyance of the property. But there is another reason why rescission could not be ordered even if a mistake was made by the city. "Whatever equity there may be in favor of one who has made a unilateral mistake in the formation of a bilateral contract, the effect of it is confined to cases where the transaction is still wholly executory." Williston on Contracts (1937 ed.) Vol. 5, p. 4414.

■ Refusing to follow such a rule would, in most cases, lead to serious consequences. In the case at bar, if the judgment of the trial court is sustained as to rescission of the contract and deed, then it must be modified to meet the requirements of 15 O.S.1951 § 235 by ordering a restoration of everything of value which the city has received under the contract. A partial rescission cannot be had. The contract must be valid or void in toto and the parties must be placed in status quo. Failure of restoration is fatal to the cause of action. Holcomb & Hoke Mfg. Co. of Indianapolis, Ind. v. Jones, 102 Okl. 175, 228 P. 986. In the case at bar, the city has been occupying the premises and using the same for garbage disposal. Restoration of defendants to their former status would seem impossible and yet, "the requirements of the code cannot be ignored." Holcomb & Hoke Mfg. Co. v. Jones, supra.

■ Furthermore, the evidence disclosed by the record and as outlined above does not meet the degree of certainty necessary to sustain the judgment. The weight of the evidence required to strike down a written contract is the same whether the relief sought be rescission or reformation if the same allegations are relied on. In the case of Eason Oil Co. v. Whiteside, 175 Okl. 254, 52 P.2d 35, 37, wherein reformation was sought, the following statement in the case of Eagle Creek Oil Co. v. Illinois-Oklahoma Petroleum Corp., 141 Okl. 122, 284 P. 43, was quoted,

"But where parties enter into a solemn agreement and reduce that agreement to writing, this agreement in the absence of fraud, overreaching, or mutual mistake, must be upheld, and the business of the country, so far as evidenced by written instruments, stabilized, and equity having regard for the sanctity of agreements changes them only with reluctance, and requires that the proof that the written instrument does not express the real contract and that the error, if any, was occasioned through mutual mistake, and the evidence must be clear, satisfactory, and free from doubt, and that the party who seeks reformation was himself free from neglect in the making of the agreement."

The same rule was quoted and followed in the later case of National Fire Ins. Co. of Hartford v. McCoy, 205 Okl. 511, 239 P. 2d 428. In the case now before us, the trial court properly found that the defendants were guilty of no fraud or inequitable conduct and that the evidence was not sufficient to entitle plaintiff to a reformation of the deed. If the weight of the evidence was not sufficient to establish the facts necessary to entitle plaintiff to a reformation of the deed, which was the relief sought, it also was insufficient to establish those same facts as grounds for rescission of the contract preceding the deed. The theory of rescission was not in the case until made a part of the judgment. But, in any event the

theory of rescission was nevertheless on no firmer ground than the theory of reformation, and judgment should have been for defendants.

The judgment is reversed and the cause remanded with directions to enter judgment for defendants.

JOHNSON, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

WELCH, C. J., CORN, V. C. J., and HALLEY and WILLIAMS, JJ., dissent.