Harold T. HOLDEN, Appellee,

v.

Ralph LaRue DuBOIS, Appellant.

No. 53662.

Supreme Court of Oklahoma.

April 26, 1983.

Rehearing Denied July 21, 1983.

Maurice E. Lampton, Tulsa, John W. Young, John M. Young, Sapulpa, for appellant.

Parks, Beard & Williamson, Tulsa, Timothy J. Crowley, Enid, for appellee.

HARGRAVE, Justice.

This appeal arises from the judgment in the District Court of Tulsa County in the above-styled cause. After trial to a jury, plaintiff Harold Holden was awarded $55,300.00 in damages, attorneys' fees, along with the return of all of his original molds still in the possession of the defendant.

Involved in this appeal are two artists/craftsmen and a contract for goods and services. Defendant below, (herein appellant) Ralph DuBois, the proprietor of the Americana Sculpture Gallery in Tulsa, Oklahoma, is a recognized craftsman in the field of sculptural metal casting. Mr. Holden, plaintiff/appellee, met appellant in 1970 at a time in his own career when he started sculpting, depicting Western themes as he had done as a commercial artist. Seeking assistance in casting his work, appellee Mr. Holden approached appellant Mr. DuBois, who recognized promise in the former's work. A series of conversations and meetings ultimately produced a written agreement, executed in September of 1970.

By the terms of the contract, appellee agreed to create fifteen original "Models of Americana Sculpture", subject to appellant's approval. These models were to be cast into 21 bronze sculptures utilizing the "lost wax process." The contract provided that appellee would make all molds for pouring the waxes, 21 for each of the 15 original models, chase all bronzes and apply the finishing patina. By subsequent oral modification, appellant agreed to make the molds and altered the division of the sculptures to 50–50 because of the extra work appellant had undertaken. (By written agreement, appellant was to retain only seven of the 21 bronzes.) Finally, to promote the sale of his work, Mr. Holden agreed to write a descriptive story of each work to enhance its artistic appeal.

The contract provided for the quality of workmanship by allowing (1) appellant to approve of the original model itself, (2) appellee to replace wax figures in the event of bronze misruns, and (3) appellant to repour any misrun casting.

The time for performance was set for five years or 15 original models executed ultimately into 21 bronzes each, or 315 completed sculptures. Both parties agreed to produce three sculptures at a time, dividing the three by alternating the first choice for each run. Appellee also agreed that for the duration of the contract he would consign all brass foundry work to appellant. Included as well in the written contract was an agreement giving appellant exclusive rights for those five years to sell appellee's sculptures in Oklahoma with a 33⅓% gallery commission.

Aggrieved that appellant's work was slow and of poor quality, appellee in April, 1974 began delivering his work to the Turkey Track Bronze Works, a competitive foundry, where he paid cash for the casting work instead of the payment/exchange method of the original contract.

In the trial below, plaintiff alleged that appellant breached the contract by his unworkmanlike and unreasonably slow performance. Plaintiff prayed for damages totaling $79,850.00, based on a computation of bronzes poorly cast or not cast at all, an accounting of all sculptures cast and the return of any molds made of his artwork, plus costs and attorneys' fees. Defendant counterclaimed for $220,500.00 in damages, contending that plaintiff breached the contract by delivering his work to another foundry prior to the agreed five-year time for performance had expired. Judgment for plaintiff below included damages of $55,300.00, $20,000.00 for attorneys' fees and the return of all molds cast from plaintiff's artwork.

Essential to assessing contractual liability in the case at bar is a determina-

tion of the nature of this contract, i.e., whether it is severable or entire, as evidenced by the agreement itself and the intention of the parties. Plaintiff recovered, successfully arguing that the contract was a "severable" or divisible contract which he could rescind as to those severable parts executory in nature and leave in effect those parts of the contract where performance had already begun. As a general rule, an entire or indivisible contract cannot be rescinded in part. The right to rescind must be exercised in toto, allowing the contract to stand or fall as a whole. This Court has stated that the "effect of rescission of a contract is to put the parties back in the same position they were in prior to the making of the contract." *Evans v. Brubaker,* 207 Okl. 42, 247 P.2d 511 (1952). Rescission requires restoration of the status quo. There can be thus no partial rescission of a contract. It is either valid or void in toto. *Ware v. City of Tulsa,* 312 P.2d 946 (Okl.1957); *King v. Oakley,* 434 P.2d 868 (Okl.1967).

■ Whether a contract is entire or divisible must be determined by whether the parties agreed to their mutual promises as a single, indivisible whole such that the bargain which they struck could only be achieved by fulfillment of the entire contract. "A contract is entire when its terms, nature, and purposes show that it is contemplated and intended that each and all of its parts, material provisions, and consideration are common each to the other and interdependent." *Snyder v. Noss,* 99 Okl. 142, 226 P. 319 (1924). In contrast, a severable or divisible contract is one whose performance is divided into different, differentiated and distinct groups wherein each separate performance forms the agreed exchange for that portion of the contract. This Court has stated that a "[s]everable contract is one susceptible of division and apportionment in its nature and purpose, and having two or more parts, not necessarily dependent on each other, nor so intended by the parties...." *Greater Okla. City Amusements, Inc. v. Moyer,* 477 P.2d 73 (Okl.1970).

■ Moreover, whether a contract is entire or divisible is determined by inquiry into the intentions of the contracting parties. A contract by its nature and terms may appear to be divisible although the parties intended for it to be entire. In *Greater Okla. City Amusements, Inc. (supra),* this Court stated: "A contract may both in its nature and by its terms be severable, and yet rendered entire by the intention of the parties. We think that perhaps the best test is whether all of the things, as a whole, are of the essence of the contract. That is, if it appeared that the purpose was to take the whole or none, then the contract would be entire; otherwise, it would be severable." *Id.* at 76.

■ Clearly, in the case at bar, from the language of the contract, the parties intended for the nature of their performance to occur as a whole, providing that each original model would be cast and the products divided until the specified number of sculptures was reached. The purpose of the contract was entire, i.e., the parties bargained for each other's performance in producing, casting and promoting these fifteen original models. No interpretation of divisibility is possible. Intrinsic to the parties' bargain was the exchange of promises relating to promotion and marketing of plaintiff's work. Plaintiff expressly agreed to write a descriptive story of each original sculpture as a means of promoting the work. Defendant, in his experience selling artistic work, found this technique effective in providing the patron a more personalized work. Additionally, defendant received exclusive rights under the contract to sell *any* bronze sculptures of the plaintiff in the Oklahoma area for a regular gallery commission of 33⅓% for the five year duration of the contract. This contract cannot be made divisible by the production of each separate bronze. Express promises of promotion encompassed the whole. An important item of consideration promised by appellant and flowing to appellee was an extensive promotion of the work of the appellee-artist. The promotion of the artist's work and reputation by its very nature is

indivisible. The entire promotional program had a single purpose and that was to enhance the artistic reputation and thereby the economic worth of appellee's sculpture. Bargained terms were intended to adhere to each and all parts of the contract.

There was additional testimony at trial indicating that appellant had sold three of appellee's paintings to Woolaroc Museum in Bartlesville, reserving a gallery commission from the purchase price. When appellee contracted with appellant herein, appellee contemplated more than mere foundry work from this relationship. The facts indicate that appellee sought to establish himself as a recognized artist and the arrangement he initiated reflected his intention to further his career. Since gallery sales are important to appellant as well to maintain his business, this contract was one for services and promotion. Given fluctuation in the art market both with dips and surges in the economy and the public's change of taste, both parties bargained for conduct that would enable them respectively to enhance their reputations.

Thus, although appellee contended that the contract is severable, divisible as to each individual model, elements of the contract were intended to adhere to each and all parts of the contract. If it was foundry work alone that plaintiff bargained for, it is difficult to understand why he acquiesced to the other terms in the contract. No money or other payment was exchanged for the services performed. The parties agreed instead to split the finished product. The fairness of that exchange was based on their agreement to take turns having first choice in each of the different runs throughout the performance. If the intention of the parties is to guide construction of the contract, this Court must conclude as a matter of law that the contract in question is an entire contract. "It is the duty of the Court to construe contracts as written." *George v. Curtain,* 108 Okl. 281, 236 P. 876 (1925). It is well established that the interpretation of a contract is a question of law for the Court. *Brown v. Coppadge,* 54 Okl. 88, 153 P. 817 (1915).

The promises of the parties are thus not severable and the contract is entire for there is no basis for determining what portion of the consideration was attributable, for instance, to the public relations, or advertising done by Mr. Dubois on behalf of Mr. Holden. The plaintiff's evidence demonstrates that the performance of the artist, Holden, was not rendered. Where the plaintiff has sued on an entire contract and has failed to show full or substantial performance, he is not entitled to recover. *Snyder v. Noss,* 99 Okl. 142, 226 P. 319 (1924). Appellee contends in his brief that the contract was severable and that he was entitled to rescind the contract as to those severable portions which remained executory, and to leave the contract in force as to those severable portions upon which performance had begun. Having made the determination that the contract was not severable as a matter of law, the appellee's theory of partial rescission need not be discussed. The evidence being uncontroverted on the point of plaintiff's failure to perform his obligations under the contract, judged to be entire, the trial court erred in failing to sustain defendant's demurrer to plaintiff's evidence and motion for directed verdict.

The contract between the parties being entire and the evidence conclusively and uncontrovertedly disclosing plaintiff had not substantially performed, plaintiff was not entitled to recover thereon. The defendant's cross petition claimed damages from the plaintiff, and the jury found for the plaintiff. The petition in error did not raise as error this verdict and judgment, but only raised as error the verdict and judgment for plaintiff on his petition. Accordingly, the judgment for plaintiff is reversed for the reason discussed and judgment is entered for the defendant. Inasmuch as no error is predicated on the plaintiff's verdict on defendant's cross petition, complete relief is afforded by this reversal and the cause need not be remanded for further proceedings.

REVERSED.

All Justices concur.