David RICHARDSON, Walter Carder, G.R. Martin, Doyle Coleman, Alva Henry, Dick Spear, R.E. Flanagan, Claude Martin, and J.R. Jack, Appellees,

v.

MUSTANG FUEL CORPORATION, Appellant.

No. 65361.

Supreme Court of Oklahoma.

April 4, 1989.

Monty L. Bratcher and Martha L. Hilderbrand, Bratcher & Teague, P.C., Oklahoma City, for appellees.

Drew Neville, Raymond E. Tompkins and Von Russell Creel, Linn & Helms, Oklahoma City, for appellant.

SUMMERS, Justice.

Certain landowners granted the Mustang Fuel Co. an easement for pipeline purposes in exchange for cash payments. Others exchanged the right of way for cash payment and among other things, the right to purchase natural gas cheaply. Where the landowners granted this easement in return for the right to purchase gas, under what circumstances may the company shut off the gas?

The company, which wishes to discontinue providing gas to all such landowners, relies on later contractual agreements which purport to allow the company to discontinue gas service on 30 days notice. Certain of the landowners (those who had not reserved the right to purchase gas in the original right of way contract) have had their claims heard and rejected by the Court of Appeals in another case[1] which is now final. The landowners who *had* reserved the right to purchase gas in the original right of way contracts ask us to affirm the lower court's order which required the company to continue providing gas. We now rule in favor of these latter landowners for reasons we are about to state.

At trial, the court ruled that all nine parties who expressly reserved the right to purchase gas were entitled to receive gas from Mustang so long as they owned their property, and so long as Mustang had not abandoned its pipeline. The court further ruled that one of the nine landowners obtained his right to receive gas under a right of way agreement which reserved the right to receive gas to himself, his successors and assigns, and that accordingly, he, his

successors and assigns were entitled to purchase gas so long as Mustang had not abandoned its right of way.

The court of Appeals by published opinion[2] reversed the trial court's order, finding that gas purchase contracts executed after the right of way agreements served as substitute contracts, and that Mustang was entitled to give notice of termination of service pursuant to the contract terms. Because we find that the covenant to supply gas constitutes a term by which Mustang holds the right of way, we rule that under these facts, its promise to supply gas operates as a covenant running with the land. We therefore vacate the opinion of the Court of Appeals, and withdraw it from publication. We affirm the order of the trial court granting permanent injunctive relief to the landowners whose right of way agreements reserved the right to purchase gas. We further modify the trial court's order, holding now that the covenant to supply gas runs with the land and therefore applies to the present landowners, their successors and assigns until such time as Mustang abandons its right of way.

During 1959–1962, Mustang purchased rights of way from numerous individual landowners, through which transactions Mustang obtained easements to lay a natural gas pipeline. The right of way contracts consisted of preprinted forms which Mustang supplied. Most landowners executed the contract as presented in its original form. Nine landowners however, declined to sign until language was added to the form reserving their right to connect to Mustang's pipe and purchase gas. The right of way grants presently at issue contained the specific language reserving to the landowners the right to purchase gas at a price comparable to that charged in the nearest city or town. In addition to granting the easement, these landowners (1) paid Mustang non-refundable deposits, (2) paid Mustang to set meters, (3) installed pipe

---

1. *Stangl v. Mustang Fuel Corp.,* 772 P.2d 1331 (Okl.App.1987) (certiorari not sought)

2. 58 O.B.J. 3383.

connections with gas meters to their homes, and (4) agreed to assume responsibility for upkeep on the connecting lines.

Thereafter, Mustang entered into separate gas purchase contracts with the various landowners, which contracts covered the price of gas, liabilities of the parties, and provided for renegotiation of the price of gas. These contracts also provided for cancellation upon thirty days written notice by Mustang to the customer, and which clause reads as follows:

"It is agreed that the line from which service is herein granted is devoted primarily to the transportation of natural gas from its point of production to the Power Plant of Oklahoma Gas & Electric Company, and that if at any time, because of diminution of supply or for any other reason, the Company deems it advisable to relocate, remove or abandon said line, then the Company shall have the right to cancel this contract, even before the expiration of the term herein provided for, by giving the Consumer Thirty (30) days' written notice of its intention to do so."

Until 1985, Mustang continued to supply gas to all right of way grantors who requested it, such having been originally required by 52 O.S.1971 § 10, which provided in pertinent part that

"whenever any gas pipeline crosses the land or premises of any one outside of a municipality, said corporation shall, by request of the owner of said premises, connect said premises with a pipe line and furnish gas to said consumer at the same rate as charged in the nearest city or town."

All affected landowners were thus entitled to request gas until that statute was declared unconstitutional in *Transok Pipeline Company v. Richardson*, 593 P.2d 1079 (Okla.1978). After the *Transok* decision Mustang, no longer statutorily obligated to connect landowners to its pipeline, gave most of its customers written thirty day termination notice pursuant to the gas purchase contracts.

The numerous plaintiffs below brought their action seeking to enjoin Mustang from cutting off the supply of natural gas. The trial court correctly recognized that the plaintiffs fell into two groups: one group who had not expressly reserved the right to purchase gas in the original right of way contracts, and the other group who expressly made such reservation as part of the original bargain. At trial, the court ruled that the subsequent gas purchase contracts controlled with respect to those landowners who had not reserved the right to purchase gas in the right of way agreement, and accordingly denied injunctive relief to this group. On the other hand, plaintiffs who had the specific reservation included in their right of way agreements were awarded permanent injunctive relief.

In the companion case,[3] the Court of Appeals affirmed the trial court's order denying injunctive relief to those plaintiffs who did not originally reserve the right to purchase gas. We deal here, however, with the landowners who reserved the right to purchase gas in the original right of way contract, and to whom we have previously granted certiorari.

▮▮▮▮    Although a written contract may be altered by a second or subsequent written agreement, 15 O.S.1981 § 237; *Gladys Belle Oil Company v. Clark*, 147 Okl. 211, 296 P. 461 (1931), in order for a later contract to operate as a rescission of a former agreement, its terms must cover fully the subject matter of the original agreement. *Rose v. Roberts*, 195 Okl. 687, 161 P.2d 851 (1945). Here, the gas purchase contracts fail to replace or even mention the original bargain which included a right of way grant to Mustang in exchange for, among other things, the right to connect and purchase gas from the pipeline. Consequently, the later gas purchase contracts cannot operate as a rescission of and substitute for the original contracts including right of way grants.

---

**3.** *Stangl v. Mustang Fuel Corp.,* supra, footnote 1.

■ Even if we held that the gas purchase contracts rescinded and replaced the original right of way grants, the result would understandably make Mustang unhappy. "Rescission requires restoration of status quo and means to restore the parties to their former position." *King v. Oakley*, 434 P.2d 868, 872 (Okla.1967); 15 O.S.1981 § 235. Under both *Rose* and *King*, supra, once Mustang stopped delivering gas to right of way grantors who had reserved the right to purchase gas, rescission would necessarily require that Mustang remove its pipelines from the landowners' property in order to "put the parties back in the same position they were in prior to the making of the contract." *Holden v. Du-Bois*, 665 P.2d 1175, 1177 (Okla.1983); see also 15 O.S.1981 § 235. Since no suggestion appears that Mustang intends to abandon its pipeline and thereby effect a complete rescission of the original grant, we rule that none has occurred.

Mustang argues that the specific reservations are meaningless simply because the *Transok* decision removed the statutory obligation originally binding Mustang to supply gas on request to landowners across whose property a pipeline travels. At trial, the court admitted into evidence testimony that Mustang by choice would not be a gas supplier, and that it supplied only because of the statutory duty. Absent from the testimony or argument, however, is any indication that the specific reservation clauses were not bargained for, or were merely superfluous.

The many right of way contracts executed in favor of Mustang appear to be simple form contracts prepared and distributed by Mustang. Mustang was at all times aware of the statutory requirement to supply gas, and apparently protected itself from a continuing obligation by obtaining all but nine of the right of way agreements without the specific reservation language. But no language was inserted that the reservation would be in effect only so long as the statute required that gas be furnished. Oklahoma law "places primary significance on the intent of the parties at the time of contracting, ... and the intention of both parties must be found in the whole contract and a construction given to the contract which will give effect to each provision." *Amoco Production Co. v. Lindley*, 609 P.2d 733, 741 (Okla.1980). Further, we recognize as "a common reality that printed contracts will be construed most strongly against the party who prepared them." *Id.* at 745; *Continental Federal Savings & Loan Ass'n v. Fetter*, 564 P.2d 1013 (Okla.1977).

■ We turn next to the effect of the reservation language. The right of way grants before us include a reservation clause inserted into the preprinted form which reserves to the grantor the right to purchase gas upon request at a rate comparable to the nearest city or town. Although the precise language in the grants differs slightly, the substance is the same.[4] The landowners contend that this language creates a covenant running with the land, while Mustang argues that it creates only a personal covenant.

The original right of way grants created numerous express covenants. At issue are the grantors' covenants to permit Mustang to use the designated right of way for installation of a natural gas pipeline. In return, Mustang covenanted to provide gas. "A covenant running with the land is one relating to the land, or as more commonly said one which touches and concerns the land itself, so that *its benefit or obligation passes with the ownership*." *Local Federal Savings & Loan Ass'n v. Eckroat*, 186 Okl. 660, 100 P.2d 261, 262 (Okla.1940) (emphasis supplied). Clearly, both a benefit and an obligation inure to the covenanting parties before us. The landowners benefit by being able to obtain readily available natural gas at competitive prices.

---

4. The language used in the grant executed by Alva Henry is representative:

"Grantor reserves the right to purchase gas upon request at a rate comparable to the nearest city or town.

They bear the obligation however, of permitting the pipeline to cross their property until such time as Mustang abandons the line. Mustang benefits by having a permanent right of way, and is obligated by the express reservation to supply gas to these landowners.

Both parties assert our ruling in *Town of Skiatook v. Brummett*, 387 P.2d 115 (Okla. 1963). In *Brummett*, a landowner granted the town a water pipeline right of way in exchange for the right to use water. We found that the covenant to supply water ran with the land. No different result should obtain under the present circumstances. The general rule states that covenants to furnish gas [5] and to supply water [6] are usually regarded as covenants real.

Application of this general rule, cited with approval in *Brummett*, to today's case appears consistent both with existing law, and more importantly, with the original agreement between the parties granting a right of way in return for access to the gas line. Mustang seeks to separate the original grant into (1) the covenant granting the right of way and (2) the covenant to supply gas. We rejected that argument, finding that the covenant to supply water was indivisible from the contract in its entirety. *Id.* at 115 (court's syllabus).

■ The landowners urge us to apply the rule that a personal covenant runs with the land when such covenant constitutes a term by which the easement is held. C. Clark, *Real Covenants and Other Interests Which Run With the Land* (2d ed. 1974). Mustang argues that this rule transforms every personal covenant into a covenant running with the land. We disagree. Only in instances in which an easement or right of way is granted in conjunction with and in exchange for an express personal covenant which relates to the land itself will the personal covenant run with

the land as does the easement or right of way. Then, both the benefit and the obligation must pass with ownership.

Here, both the right of way and the covenant to supply gas satisfy the test. Clearly, a right of way which limits the owner's use of a portion of realty touches and concerns the land. Similarly, the opportunity for a rural landowner to have a readily available supply of natural gas enhances the value and utility of the realty itself. Consequently, we find that both covenants here at issue affect the land, and satisfy the definition of covenants real.

■ Mustang finally argues that the trial court improperly granted injunctive relief, and that the landowners had an adequate remedy at law in money damages. The landowners respond that the likely cost of gas from another source in the future is sufficiently ephemeral to support the Oklahoma court decisions holding that deprivation of utility service constitutes irreparable injury. See *Galheath Gas Co. v. Lindsey*, 129 P. 45 (Okla.1912); *Backus v. Panhandle Eastern Pipe Line Co.*, 558 F.2d 1373 (10th Cir.1977). Another ground for such equitable relief is the prevention of a multiplicity of suits. *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.*, 111 P. 326 (Okla.1910).

> "The granting or refusing of an injunction rests to some extent within the sound discretion of [the] trial court, and its judgment ... will not be disturbed on appeal unless it can be said [that] the court abused its discretion, or that the judgment rendered is clearly against the weight of the evidence." *Johnson v. Ward*, 541 P.2d 182, 188 (Okla.1975).

We have reviewed the evidence, and find that the trial court did not abuse its discretion in awarding injunctive relief, nor was its decision clearly against the weight of the evidence.

**5.** *Alderson v. Empire Natural Gas Co.*, 116 Kan. 501, 227 P. 347 (1924); *Slife v. Kundtz Properties, Inc.*, 40 Ohio App.2d 179, 318 N.E.2d 557, 560 (1974); *Prochemco, Inc. v. Clajon Gas Co.*, 555 S.W.2d 189, 191 (Tex.Civ.App.1977); *Har-*

*bert v. Hope Natural Gas Co.*, 84 S.E. 770 (W.Va. 1915).

**6.** *Town of Skiatook v. Brummett*, supra.

We hold that the express covenants granting right of way to Mustang and granting to appellees the right to purchase gas constitute covenants running with the land because each touches and concerns the land itself, and the covenant to supply gas is a covenant by which Mustang holds its right of way. We therefore vacate the Court of Appeals decision and withdraw the same from publication. We affirm as modified the order of the trial court.

HODGES, LAVENDER, SIMMS, DOOLIN and ALMA WILSON, JJ., concur.

HARGRAVE, C.J., OPALA, V.C.J., and KAUGER, J., dissent.