WIGGIN PROPERTIES v. ARCO BUILDING
2022 OK CIV APP 13
Case Number: 117593; Comp./116403
Decided: 06/15/2021
Mandate Issued: 04/27/2022
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2022 OK CIV APP 13, __ P.3d __

 

WIGGIN PROPERTIES, LLC, an Oklahoma Limited Liability Company, Plaintiff/Appellee,
v.
ARCO BUILDING, LLC, an Oklahoma Limited Liability Company, Defendant/Appellant,
and
JAMES F. HAWKINS, JR., an individual, Third-Party Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE JAMES CAPUTO, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART, 
AND REMANDED FOR FURTHER PROCEEDINGS

Joseph R. Farris, FRANDEN | FARRIS | QUILLIN GOODNIGHT + ROBERTS, Tulsa, Oklahoma, for Plaintiff/Appellee

John J. Carwile, BAUM GLASS JAYNE & CARWILE, PLLC, Tulsa, Oklahoma, for Defendant/Appellant

P. Scott Hathaway, Daniel E. Gomez, CONNER & WINTERS, LLP, Tulsa, Oklahoma, for Third-Party Defendant/Appellee James F. Hawkins, Jr.

DEBORAH B. BARNES, JUDGE:

¶1 ARCO Building, LLC (ARCO), appeals the denial of its request for fees from Wiggin Properties, LLC (WP), and the award of fees to James F. Hawkins, Jr. (Mr. Hawkins).

BACKGROUND

¶2 As we noted in Companion Case 116,403, in 2009 Mr. Hawkins and defendant ARCO were involved in a failed deal for Mr. Hawkins to purchase a commercial property known as the ARCO building for conversion into condominiums (the "First Agreement"). This proposed purchase collapsed in the post-2009 real estate market, and the deal dissolved in acrimony between the parties regarding changes made to the building during the construction of a "pilot" condominium. A 2011 lawsuit resulted. ARCO was adamant that it would never again deal with Mr. Hawkins on this matter from that time on, and made this known to Mr. Hawkins.

¶3 In 2012, Mr. Hawkins entered into what the district court found to be a joint venture with WP, in which WP attempted to purchase the ARCO building for development a second time, without Mr. Hawkins' involvement being known to ARCO (the "Second Agreement"). WP and ARCO executed a sale agreement on June 30, 2012, with the intent of closing in November 2012. In the time between the Second Agreement being signed and the closing date, ARCO settled the 2011 damage suit against Mr. Hawkins that had resulted from the First Agreement. This 2012 agreement to settle the first case (the "Hawkins Settlement") is one of the bases of the fee dispute in this appeal. After the Hawkins Settlement, Mr. Hawkins let it be known that he was, in fact, involved in the new purchase agreement. ARCO then refused to consummate the Second Agreement on the grounds of Mr. Hawkins' involvement.

¶4 WP filed suit against ARCO seeking declaratory judgment, damages for breach, and an order for specific performance of the Second Agreement. ARCO counterclaimed alleging improper anticipatory repudiation, civil conspiracy and fraud, and also seeking rescission of the Second Agreement. The court granted a temporary injunction against ARCO forbidding the sale of the building to any other party. ARCO also sued Mr. Hawkins for fraud and conspiracy, and sought to rescind the Hawkins Settlement.

¶5 In a 2015 summary judgment proceeding the district court 1) denied WP's motion for summary judgment on ARCO's anticipatory repudiation and civil conspiracy claims; 2) dismissed ARCO's claim for actual fraud against Mr. Hawkins; 3) limited ARCO's claim for constructive fraud to fraudulent inducement; and 4) limited WP's damages to specific performance.

¶6 The remaining claims were tried in a non-jury trial on March 21 and 22, 2017. On September 21, 2017, the district court ruled: 1) ARCO had not proven actual fraud in the inducement of the Second Agreement by WP; 2) the Second Agreement should be rescinded because of WP's constructive fraud in the inducement; 3) WP was not entitled to specific performance because of "unclean hands" for failing to disclose Mr. Hawkins involvement; and 4) in favor of Mr. Hawkins on ARCO's remaining claims against him.

¶7 In Companion Case 116,403, we found no error in the district court's challenged decisions, finding that the identity of the purchaser was a material fact in this case which was fraudulently concealed, justifying a recession. We found, however, that a return of WP's earnest money by ARCO was an inherent part of the remedy of rescission, i.e., "Placing the parties back in the pre-contract status quo," and interpreted the district court's order as requiring the earnest money be returned.

¶8 Case 116,403 was filed in October 2017. While it was under decision, both ARCO and Mr. Hawkins filed fee applications with the court, ARCO relying on a prevailing party fee provision in the contract for the Second Agreement, and Mr. Hawkins relying on a prevailing party fee provision in the Hawkins Settlement.

¶9 On April 16, 2018, the trial court determined ARCO's motion for attorney fees and costs was denied became the requested fees were contractual, and the rescission of the Second Agreement had destroyed the contractual basis for fees. It also determined that Mr. Hawkins was entitled to fees and costs against ARCO because the Hawkins Settlement provided for prevailing party fees regarding any "breach of this agreement that results in future litigation," and ARCO had sought to rescind the Hawkins Settlement.

¶10 ARCO presents the following claims of error in its appellate petition which we reproduce verbatim:

1. Did the District Court err in ruling that Defendant ARCO Building, LLC was not entitled to recover attorney's fees against the Plaintiff Wiggin Properties, LLC ("Wiggin"), as a prevailing party when the governing contract provides for an award of fees to the prevailing party in an action brought by a party to enforce its rights under the contract?

2. Did the District Court err in ruling that Defendant ARCO Building, LLC was not entitled to recover attorney's fees against the Plaintiff Wiggin Properties, LLC, as a prevailing party when the governing contract provides for an award of fees to the prevailing party in an action brought to enforce a party's rights under the contract and ARCO successfully defeated Plaintiff Wiggin's claim for specific performance through a successful assertion of a defense of unclean hands?

3. Did the District Court err in ruling that Third-Party Defendant James F. Hawkins, Jr. was entitled to recover attorney's fees against Defendant ARCO Building, LLC, in the absence of any statutory basis, when the applicable contract provides for an award of attorney's fees only to a party prevailing on a claim for breach of that contract?

4. Did the District Court err in failing to apportion the attorney's fees awarded to Hawkins to allow fees incurred only for work on fee bearing claims on which Hawkins prevailed, and not allow fees incurred on claims in which ARCO prevailed against Hawkins?

5. Did the District Court err in failing to apportion the attorney's fees awarded to Hawkins to allow fees incurred only for attorney's work done on fee bearing claims, and not allow fees incurred for work on non-fee bearing claims?

6. Did the District Court err in awarding Hawkins an amount of attorney's fees that is excessive and not reasonable, and not in compliance with the mandate of Burk v. The City of Oklahoma City, 179 OK 115, 598 P.2d 659

7. Did the District Court err in awarding fees to Hawkins that do not bear a reasonable relationship to the amount in controversy and to the judgment recovered?

8. Did the District Court err in awarding any amount of fees to Hawkins when the District Court had previously found that Hawkins had unclean hands and when the Court had also previously found that Hawkins was in a joint venture with Plaintiff Wiggin Properties, LLC and had participated in and joined in committing constructive fraud on Defendant ARCO Building?

9. Did the District Court err in awarding fees based upon findings or reasoning in conflict with, and inconsistent with, its Findings of Fact and Conclusions of Law entered September 21, 2017?

STANDARD OF REVIEW

¶11 The reasonableness of attorney's fees and incentive awards depends on the facts and circumstances of each case and is a question for the trier of fact. The standard of review for considering the district court's award is an abuse of discretion. Hess v. Volkswagen of Am., Inc., 2014 OK 111341 P.3d 662Christian v. Gray, 2003 OK 1065 P.3d 591

¶12 The issues in this appeal also concern the legal interpretation of issues involving contractual fees. The correct standard of review for these issues is de novo. State ex rel. Prot. Health Servs. State Dep't of Health v. Vaughn, 2009 OK 61222 P.3d 1058de novo standard of review, the Court has plenary, independent, and non-deferential authority to determine whether the district court erred in its legal rulings. Id.

ANALYSIS

I. THE EFFECT OF RESCISSION ON ARCO'S CLAIM FOR CONTRACTUAL FEES

¶13 ARCO's fees were claimed pursuant to a contractual fee provision in the Second Agreement to purchase the building in question. The court reasoned that, as ARCO had been successful in rescinding the agreement, no contractual basis for fees survived the rescission. No case law directly on point was cited, and there appears to be little direct authority on this question in Oklahoma.

A. The Basic Law of Rescission 

¶14 The common principle of Oklahoma law is that "Rescission requires restoration of status quo and means to restore the parties to their former position." Richardson v. Mustang Fuel Corp., 1989 OK 53772 P.2d 1324King v. Oakley, 1967 OK 211434 P.2d 868Id. "There can be thus no partial rescission of a contract. It is either valid or void in toto." Holden v. DuBois, 1983 OK 45665 P.2d 1175 Ware v. City of Tulsa, 1957 OK 148312 P.2d 946King). On rescission of a contract, it is voided ab initio, and the rights of the parties in reference to the subject matter are the same as if no contract had ever been made. Hooper v. Commercial Lumber Co., 1959 OK 87341 P.2d 596

¶15 "A contract is extinguished by its rescission." 15 O.S. § 232

B. Fees as Part of a Restoration of the Status Quo

¶16 ARCO agues, however, that it was forced to expend considerable fees in obtaining a justified rescission and will not be "back in the same position it was in prior to the making of the contract" unless those fees are recovered. Therefore, contractual fees are an implied part of the remedy of rescission of the Second Agreement. The immediate problem with this remedy argument is that rescission requires that "the parties," i.e., both parties, be returned, as near as possible, to the pre-contractual status quo. The remedy does not appear to discriminate between the party seeking rescission, and the party opposing it. Without fees, WP will not be in the same position it was in prior to the making of the contract either. ARCO's position is, therefore, not one of putting both parties back in their original state, including fees expended, but rather that it has a right to benefits provided by the contract in terms of a prevailing party fee, even after rescission.

¶17 This argument touches on the general common law doctrine of mutuality, i.e., had WP been successful in opposing rescission, it would have been entitled to fees, and hence mutuality requires that ARCO receive fees for obtaining rescission. No Oklahoma case law answers this question in the scenario of a contractual rescission, however.

C. The Law of Other States regarding Contractual Fees and Recission 

¶18 Examining the law of other states, we find no clear consensus. The following states hold that contractual fees are generally not recoverable after a complete rescission:

¶19 Indiana law appears clear that it is not possible to recover contractual fees if the underlying contract is rescinded. See Higham v. Harris, 8 N.E. 255 (Ind. 1886); Barrington Mgmt. Co., Inc. v. Paul E. Draper Family Ltd. P'ship, 695 N.E.2d 135 (Ind. Ct. App. 1998); Powers v. Ford, 415 N.E.2d 734 (Ind. Ct. App. 1981) (where rescinded contract provided for recovery of attorney's fees, successful plaintiff could not recover fees).

¶20 Colorado holds that the remedies of rescission of a contract and enforcement of a fee provision of the same contract are inherently inconsistent. Kennedy v. Gillam Dev. Corp., 80 P.3d 927, 930 (Colo. App. 2003).

¶21 Oregon also holds that a plaintiff who successfully sues for rescission and therefore prevails against a counterclaim for breach of contract may not invoke the rescinded contract to recover attorney fees. Niedermeyer v. Latimer, 769 P.2d 771, 772 (Or. 1989).

¶22 By comparison, certain other states allow the recovery of contractual fees where a consummated contract is later rescinded. Florida holds that when parties enter into a contract and litigation later ensues over that contract, attorney's fees may be recovered under a prevailing-party attorney's fee provision contained therein even though the contract is rescinded or held to be unenforceable. Katz v. Van Der Noord, 546 So.2d 1047, 1049 (Fla. 1989).

¶23 In California, it is "well established that a party may rescind a contract and still recover attorneys' fees under the rescinded contract." Pac. Fuel Co., LLC v. Shell Oil Co., 416 Fed. Appx. 607, 611 (9th Cir. 2011), citing Santisas, 71 Cal.Rptr.2d 830, 951 P.2d at 407.

¶24 Montana also holds that, when parties enter into a contract and litigation later ensues over that contract, attorney's fees may be recovered under a prevailing-party attorney's fee provision contained therein even though the contract is rescinded or held to be unenforceable. Norwood v. Serv. Distrib., Inc., 2000 MT 4, ¶ 56, 994 P.2d 25.

¶25 Nevada adopted the Florida rule in Mackintosh v. California Federal Savings. & Loan Association, 935 P.2d 1154, 1162 (Nev. 1997) (citing Katz v. Van Der Noord, 546 So.2d 1047 (Fla. 1989).

¶26 It is likely that other examples exist, but this limited survey shows that there is no consensus among the various states on this issue. We must therefore predict how Oklahoma law would govern the issue. The general tenor of the various Oklahoma statutes and case law indicate that Oklahoma does not currently recognize a fee clause as surviving a rescission of the underlying contract. Our survey of the existing law shows that a rescinded contract is void in toto, or "extinguished" in the wording of § 232, and no part of it survives a judicially ordered rescission. Things are as if no contract was ever made. The effect of a rescission in Oklahoma appears closest to that of a voiding of the contract ab initio. 

¶27 While Oklahoma does generally appear to disapprove of unilateral or non-mutual fee clauses, we find little or no Oklahoma precedent supporting what would constitute a substantial change in state contract law that would either sever a fee provision in the event of rescission, or declare contractual fees to one party as part of the remedy of rescission. We decline to impose such a change here, and find the fee provisions in the contract were voided ab initio by the rescission. Hence, ARCO may not recover contractual fees from WP.

II. THE FEE AWARD TO MR. HAWKINS 

¶28 Mr. Hawkins' fee award was also contractual, but based on a different contractual agreement. The Hawkins Settlement concluding the first lawsuit between ARCO and Mr. Hawkins contained the following provisions:

[ARCO] and Hawkins fully and mutually release and discharge the other from any and all claims, counterclaims, damages, defenses, attorneys' fees, actions and causes of action whatsoever, whether known or unknown, liquidated, unliquidated, fixed, contingent, material, immaterial, disputed, undisputed, legal or equitable, which either party had, now has or hereafter may have against the other arising out of or related to the [First Agreement] and the claims asserted in the [2011 suit].

With respect to attorneys' fees, the Hawkins Settlement provides:

In the event there is a breach of this Agreement that results in future litigation over such breach, the prevailing party in that litigation shall recover attorney fees and court costs.

¶29 It is the claim for rescission of the prior Hawkins Settlement that creates the alleged contractual basis for Mr. Hawkins' fee request.

A. Breach of the Agreement

¶30 ARCO first argues that the Hawkins Settlement provides fees only in the event of a breach of the agreement that results in litigation, and that its recission claim did not "breach" the agreement. Neither party directs us to case law discussing whether an unsuccessful attempt to rescind a settlement constitutes a breach of its terms for the purposes of contractual fees.

¶31 ARCO's argument is that it did not fail to perform any obligation under the agreement, but simply sued to rescind the agreement itself on the basis of fraud. We disagree. Among the obligations created by the agreement is one to mutually release and discharge the parties from all claims, actions and causes of action whatsoever, "now or . . . hereafter . . . arising out of or related to the [First Agreement] and the claims asserted in the [2011 suit]." We interpret this language as covering the current situation. Mr. Hawkins bargained in this settlement for a cessation of claims based on the First Agreement. An attempt to overturn the Hawkins settlement, by whatever means, clearly attempts to reinstate those claims. The situation is practically the same as if ARCO had re-filed the claims and forced Mr. Hawkins to defend the settlement. We find ARCO's actions constituted a breach of the Hawkins Settlement for the purposes of the fee provision.

B. Contractual Fees and Apportionment

¶32 The first question before examining the apportionment issue in this case is whether the general Oklahoma rules and doctrines of apportionment apply in a case of contractual fees. The basis for apportionment under the American Rule is clear. Mr. Hawkins raised, however, the argument that contractual fees are awarded pursuant to the party's agreement rather than statutory requirements, and hence the apportionment rule of Green Bay Packaging, Inc. v. Preferred Packaging, Inc., 1996 OK 121932 P.2d 1091

¶33 The possibility of an award of contractual attorney fees exists because the parties chose to enter into an agreement containing a fee provision. The award is a business risk assigned as a matter of mutual agreement by the parties. These sophisticated parties are clearly free to explicitly reject apportionment between fee-bearing and non-fee-bearing claims if they wish, and even shift the burden under the American Rule. In this case, however, the agreement provides that "the prevailing party in that litigation shall recover attorney fees and court costs" incurred in "future litigation over such breach." It does not facially include fees for the litigation of any matter other than the alleged breach of the settlement agreement. It therefore contemplates apportionment if litigation over the breach of the Hawkins Settlement agreement is intermixed with other non-germane litigation. In the absence of any specified apportionment procedure, we will use that specified by the common law of Oklahoma.

C. Apportionment 

¶34 ARCO's next argument is that the district court failed to require Mr. Hawkins to properly apportion his fees between the defense of the prior settlement agreement, and the claims regarding his second attempt to purchase the ARCO building through WP.

¶35 A fundamental feature of the American Rule is that an entitlement to a fee is not presumed. The moving party must show legal and factual entitlement to a fee. Curry v. Streater, 2009 OK 5213 P.3d 550Whitehorse v. Johnson, 2007 OK 11156 P.3d 41

¶36 In a "multi-faceted case involving a judgment in which only some of the matters authorize attorney fees" the court must distinguish, on the record, between the compensable and non-compensable attorney time and effort, where possible. Mittal v. Bluestem Emergency Med. P.L.L.C., 2019 OK CIV APP 65451 P.3d 935Silver Creek Investments, Inc. v. Whitten Const. Mgmt., Inc., 2013 OK CIV APP 49307 P.3d 360Atwood v. Atwood, 2001 OK CIV APP 4825 P.3d 936

¶37 This Court has recognized that it is not necessary, however, to segregate time spent on fee-bearing and non-fee-bearing claims when the time is "common" to the elements of both claims. See Cline v. DaimlerChrysler Co., 2005 OK CIV APP 31Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933 (1983)) (time spent in establishing a "common core of facts" necessary for both fee-bearing and non-fee-bearing claims need not be apportioned).

D. Segregation of Fees, and the Inextricably Intertwined Rule 

¶38 Several divisions of this Court have referred to this principle that time spent establishing a necessary element of a fee-bearing claim is fully compensable, even if it also serves to establish elements of a non-fee-bearing claim, as one of "inextricably intertwined" time. See Beavers v. Byers, 2010 OK CIV APP 79239 P.3d 484Bank of Am., N.A. v. Unknown Successors of Lewis, 2014 OK CIV APP 78336 P.3d 1034

¶39 ARCO's reply brief disputes the legal force or existence of the inextricably intertwined rule we have examined above, arguing that the Supreme Court has never adopted the various COCA cases we have cited. This is so, but neither has the Supreme Court, to date, disapproved of the rule, or made any proclamation that might call its correctness into doubt. We will apply it here.

E. Apportionment Between the Various Claims

¶40 As the apportionment question requires an examination of common facts and elements necessary for both fee-bearing and non-fee bearing claims, the first task is to determine upon what facts and theories the claim for the rescission of the Hawkins Settlement was based. The theory that Mr. Hawkins committed fraud in the Settlement was first raised as part of the fraud allegations in ARCO's amended third-party petition of April 24, 2013. Paragraphs 29 and 31 of the petition state:

29. During the negotiations and prior to the settlement of the Hawkins Litigation, Hawkins had many opportunities to disclose his partnership with Plaintiff to ARCO but did not. Hawkins intentionally concealed its partnership with Plaintiff because he knew ARCO would refuse to settle the Hawkins Litigation and refuse to enter into the Contract due to such partnership and Hawkins' involvement in the transaction.

31. Because of the circumstances, Hawkins had a duty to disclose to ARCO its partnership with Hawkins [sic] prior to the settlement of the Hawkins Litigation and execution of the Contract.

ARCO's position in litigation was clearly that it would not have agreed to either the Hawkins Settlement, or the Second Agreement, if it had known of Mr. Hawkins involvement in the Second Agreement.

¶41 Untangling which of the various claims are intertwined with ARCO's claim of fraud by Mr. Hawkins in the Hawkins Settlement presents some difficulty, however. The claims at issue in this case were:

1. WP's claim for specific performance against ARCO;

2. ARCO's "anticipatory repudiation" claim that WP was not entitled to specific performance because WP had previously repudiated the Second Agreement;

3. ARCO's "unclean hands" defense against the remedy of specific performance;

4. ARCO's claim of fraud by Mr. Hawkins;

5. ARCO's claim of fraud by WP;

6. ARCO's claim of a conspiracy between WP and Mr. Hawkins to commit these frauds; and

7. ARCO's claim to rescind the Hawkins Settlement.

¶42 As the district court noted, Mr. Hawkins appears to have participated in the litigation of the claims brought against WP, even though they were not nominally against him. We must therefore determine whether time Mr. Hawkins spent on each of these claims was necessary for the fee-bearing defense of the Hawkins Settlement.

1. Defense of the Claim of Fraud by Mr. Hawkins

¶43 It is clear that the fraudulent act alleged in the Hawkins Settlement was the same fraud alleged in the Second Agreement -- i.e. ARCO would not have settled if it had known of the fraudulent concealment of Mr. Hawkins' role in the Second Agreement. It was therefore necessary for Mr. Hawkins to defend the claim of fraud in the Second Agreement to preserve the Hawkins Settlement, even if this defense might also benefit Mr. Hawkins in his attempt to purchase the building. ARCO has, by its own pleading, "inextricably intertwined" the alleged fraud in procuring the Hawkins Settlement with the alleged fraud in procuring the Second Agreement by basing both claims on the same acts. Therefore, any time devoted to defending against ARCO's claims of fraud by Mr. Hawkins is properly attributed to Mr. Hawkins' defense of the settlement agreement.

2. Defense of the Claim of Fraud by WP

¶44 We reach an opposite conclusion on the question of whether any time Mr. Hawkins spent defending the claims of fraud by WP would be compensable. The trial court did note that Mr. Hawkins had spent a substantial amount of time in defense of WP's actions in the Second Agreement. This is understandable because ARCO made Mr. Hawkins a potentially liable party to the claim seeking damages for fraud in the Second Agreement by alleging that WP and Mr. Hawkins were engaged in a joint venture to purchase the building.

¶45 Although this claim of a joint venture may have necessitated Mr. Hawkins to defend WP's action in the Second Agreement, we find, however, no indication that ARCO pled any theory that would justify rescission of the Hawkins Settlement because of WP's acts in the Second Agreement. Even if the district court found that WP committed fraud in the Second Agreement, this finding would not constitute fraud in obtaining the Hawkins Settlement, because WP was not a party to that settlement or engaged in a joint venture with Hawkins regarding the settlement, and had no duty to speak regarding it.

¶46 Any time spent by Mr. Hawkins defending alleged fraud by WP was therefore for the non-fee-bearing purpose of defending Mr. Hawkins' potential liability as a joint venturer in the Second Agreement and facilitating Mr. Hawkins' acquisition of the building, not for the fee-bearing defense of the Hawkins Settlement. It must be segregated.

3. The Conspiracy Claim

¶47 The conspiracy claim was dismissed on summary judgment. We find no indication that ARCO pled a "conspiracy" to obtain the Hawkins Settlement by fraud. It pled a conspiracy to facilitate the Second Agreement by fraud. Time spent defending this claim was not related to the defense of the Hawkins Settlement, and is not fee bearing. It must be segregated.

4. Other Claims

¶48 WP's claim for specific performance against ARCO, ARCO's "anticipatory repudiation" claim, and ARCO's "unclean hands" defense against the remedy of specific performance have no relation to the alleged fraud in obtaining the Hawkins Settlement. Time spent defending these claims was related to the attempted second purchase of the building, and not related to the defense of the Hawkins Settlement, and is not fee bearing. It must be segregated.

F. The Court's Fee Order 

The district court's fee order makes the following findings:

20. The Court determines and finds that a substantial amount of the fees requested by Hawkins were directly related to assisting Wiggins position in attempting to enforce the contract with ARCO.

21. Hawkins devoted a great deal of time and resources assisting Wiggins in hopes that Wiggins would prevail thus protecting Hawkins interest in the purchase of the subject property as a partner of Wiggins, a partnership that this court found to be the product of unclean hands.

22. Although Hawkins argues that the only way it could defend itself is to assist Wiggins in its position, the court is unpersuaded by this argument and finds that apportionment of Hawkins requested fees is appropriate in this matter.

23. In accordance with Burk v. City of Oklahoma City, 598 P.2d 659

24. As stated earlier in this decision, Hawkins devoted a great deal of time and resources assisting Wiggins litigation in hopes that Wiggins would prevail thus protecting Hawkins interest in the purchase of the subject property as a partner of Wiggins. The Court also found for that reason apportionment of Hawkins requested fees are appropriate in this matter.

25. The Court, in reviewing the fees assessed and the purpose for assessments finds that the number of hours spent litigating ARCO v Hawkins and those fees attributable to hours spent in its defense but while simultaneously assisting Wiggins are a reasonable and necessary expense and that those expenditures of time and resources expended only for the benefit of Wiggins are not subject to a fee award.

26. This Court finds that although the issues do not seem to be novel, the idea that one party might not prevail without the assistance of another seems to be a novel question and this court took that into consideration . . . .

¶49 The district court does appear to have made substantially the correct analysis. Time spent defending the Second Agreement is generally not compensable unless it relates to the claim that Hawkins (not WP) fraudulently concealed the material fact of his involvement, which was common to both the claim of fraud in the Second Agreement, and the claim of fraud in obtaining the Hawkins Settlement. Mr. Hawkins' original fee request of $447,000 was reduced to $282,000 by the district court. ARCO argues that Mr. Hawkins made no attempt, however, to segregate his fees in the manner we have suggested, and the district court made no findings on apportionment. The trial court's order is not immediately clear how it arrived at the reduction from $447,000 to $282,000. Nonetheless, if it is supported by evidence in the record, we will affirm it.

G. The Evidence on Apportionment

¶50 Mr. Hawkins' last submission on the fee matter before the court made its decision was his proposed findings of fact and conclusion of law filed in August 2018. In it, Mr. Hawkins is clear that he believed no apportionment was appropriate. In its parallel filing, ARCO suggested some form of apportionment, and concluded that Mr. Hawkins was entitled to a maximum of $74,304.40 in fees. There is little room for correlation between $447,000, $282,000 and $74,000. It appears that, once the court determined that the fees should be apportioned, the fee proceedings should likely have been continued at this point, and Mr. Hawkins ordered to make an apportionment.

¶51 It is the duty of a party seeking a fee to show a legal and factual entitlement to that fee. Curry, 2009 OK 5duty of the moving party to show its legal and factual entitlement to the fee claimed by performing the initial apportionment, not the duty of the court to comb timesheets and attempt to assign time to fee-bearing versus non-fee-bearing claims, or the duty of the opposing party to perform an initial apportionment.

¶52 As it stands, however, we have no record that either Mr. Hawkins or ARCO made any apportionment pursuant to the factors we have outlined above. As such, the situation is similar to that in Burk,

III. OTHER ISSUES

A. The Amount in Controversy and the Judgment Recovered

¶53 ARCO further argues that any fee award should have been restricted because the Hawkins Settlement involved a relatively minor claim for damages to the building amounting to some $25,000. This argument first requires us to assume that the principle that "[a]ttorney's fees . . . must bear some reasonable relationship to the amount in controversy" set out in Southwestern Bell Telephone Co. v. Parker Pest Control, Inc., 1987 OK 16737 P.2d 1186

¶54 Even if we assume the question of the "reasonableness" of fees applies in a contractual setting, however, the question is one of what is "reasonable" under the circumstances. In this case, it was ARCO that sued to rescind the settlement. The reasonableness inquiry does not generally favor complaints that the target of a suit spent too much on a conventional successful defense. Mr. Hawkins further argued convincingly in his appellate briefs that ARCO refused to confirm that, if the settlement was rescinded, it would seek damages caused only by the failure to clear up after the pilot condo project. ARCO indicated that it wished to bring claims for lost opportunity costs, and even punitive damages. ARCO having left the "amount in controversy" uncertain during the litigation, we find no record allowing us to rule that it was only $25,000.

B. Did the District Court err in Awarding Fees Based upon Findings or Reasoning in Conflict with, and Inconsistent with, its Findings of Fact and Conclusions of Law entered September 21, 2017?

1. Fraud but No Rescission

¶55 Possibly the most vexing issue in this case is the findings of the court numbered 181-184 regrading constructive fraud, which do appear inconsistent, as follows:

181. Defendant has satisfied by clear and convincing evidence all of the elements required to establish that Plaintiff [WP] committed constructive fraud upon Defendant in connection with execution of the ARCO Purchase Agreement. 

182. Defendant has satisfied by clear and convincing evidence all of the elements required to establish that Third-Party Defendant [Hawkins] committed constructive fraud upon Defendant in connection with execution of the Hawkins' Lawsuit Settlement Agreement. 

183. As a result of the Plaintiffs constructive fraud, Defendant is entitled to the equitable remedy of rescission of the ARCO Purchase Agreement.

184. Defendant ARCO is not entitled to the equitable remedy of rescission of the Hawkins' Lawsuit Settlement Agreement.

¶56 Absent any other information, we find these statements difficult to reconcile. The court found that Mr. Hawkins committed constructive fraud in the execution of the Hawkins Settlement, but refused the claim to rescind the settlement on the grounds of constructive fraud. The court's findings of September 21, 2017, were, however, appealed from in Companion Case 116,043. ARCO did not challenge on appeal the findings that, although Mr. Hawkins committed constructive fraud upon ARCO in connection with execution of the Hawkins Settlement, ARCO was not entitled to the equitable remedy of rescission.

¶57 WP did raise these findings in its appeal, but did not ask the court to overturn the findings involving Hawkins. Instead, WP asked the court to overturn the findings involving WP on the grounds that, if the Hawkins Settlements should not be rescinded for constructive fraud, the Second Agreement should not be rescinded either. This request does not constitute a challenge to the findings regarding Mr. Hawkins. Therefore, even if these findings were inconsistent, they are beyond appeal at this stage, and constitute the settled law of the case for the purposes of the fee argument.

2. Unclean Hands

¶58 ARCO argues that there is a further inconsistency between finding that WP's claim for specific performance should be denied because of "unclean hands" on the part of WP and Mr. Hawkins, and allowing fees for Mr. Hawkins defense of the settlement agreement. The court's finding that specific performance of the Second Agreement was barred by unclean hands was clearly a secondary finding, as it had already granted rescission, mooting any claim for specific performance. Unclean hands is an equitable defense against an equitable remedy, in this case, specific performance. Smith v. Owens, 1963 OK 187397 P.2d 673Story v. Hefner, 1975 OK 115540 P.2d 562

¶59 The fee request here is contractual, not equitable, however, and the unclean hands defense to specific performance of the Second Agreement does not implicate ARCO's attempt to overturn the Hawkins Settlement.

CONCLUSION

¶60 Numerous issues were presented in this appeal. In summation, we conclude the following:

1. This matter was litigated by sophisticated parties and experienced counsel who made strategic and legal choices on how best to proceed that have impacted the fee inquiry.

2. The current law of Oklahoma does not allow a party who is successful in rescinding a contract to invoke a prevailing party fee provision of the rescinded contract, and hence we affirm the trial court decision that ARCO is not entitled to fees in this matter.

3. Fee apportionment is required in this case pursuant to the principle we have outlined in this Opinion.

4. Mr. Hawkins did not attempt to perform such an apportionment, and, as such, we are unable to conduct a meaningful review of the amount arrived at by the district court.

5. Hence this matter must be remanded for Mr. Hawkins to make an apportionment, and the district court to rule on the appropriate fees.

¶61 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

RAPP, J. (sitting by designation), and PEMBERTON, J. (sitting by designation), concur.

FOOTNOTES

1979 OK 115598 P.2d 659